[S. F. No. 858.  Department Two.—July 23, 1898.]

BERNARDO FERNANDEZ, Respondent, v. PATRICK TOR-
MEY et al., Appellants.

MORTGAGE—INDEMNITY—ASSIGNMENT OF SECURITIES.—A mortgagee, whose
mortgage purported to indemnify him against any loss which he
might sustain on account of an assignment of securities made by
him to secure a debt of the mortgagor to a third party, must have
sustained actual loss, as distinguished from liability therefor, re-
sulting proximately from the assignment, in order to vest him with
any right of action upon the mortgage on account of such assign-
ment.

ID.—PLEDGE—TITLE OF PLEDGOR.—The securities having been assigned and
held by way of pledge for the payment of the mortgagor's note, the
title of the mortgagee, as pledgor, was not divested merely by force
of the assignment; and he cannot claim to have sustained loss, by
reason of the assignment, to the extent of the face value of the
securities.

ID.—LIABILITY OF MORTGAGOR—FACE VALUE OF SECURITIES.—The mortgagor
cannot be held liable for the face value of the pledged securities,
there having been no sale thereof, and no agreement that the mort-
gagor should become responsible for their face value to the mortga-
gee, security therefor not being within the terms of the indemnify-
ing mortgage, interpreted in the light of the surrounding circum-
stances.

ID.—PROSPECTIVE OPERATION OF INDEMNITY.—The natural import of a mort-
gage by way of indemnity is to indemnify against contingent loss
not yet accrued; and agreements for indemnity are to be construed
as having a prospective operation, when a different intent is not
expressed.

ID.—ACTION UPON PLEDGED SECURITIES—CONVERSION.—The action of the
pledgee in suing upon the assigned securities, for the purpose of col-
lecting the money due thereon, is lawful, and cannot constitute a
conversion thereof by him.

ID.—DEPRECIATION IN VALUE OF SECURITIES.—The mere decline of the
securities in market value, which is not attributable to the assign-
ment thereof by way of pledge, and which so far as appears would have
been the same had the assignment not been made, cannot be held
as a loss for which the mortgagor is liable.

ID.—ENFORCING OBJECT OF MORTGAGE—PAROL AGREEMENT.—The mortgagee
can enforce the mortgage only to accomplish the object for which
it was made; and where the terms of the mortgage properly inter-
preted, show that it was intended to indemnify against the conse-
quences of a pledge, it cannot be enforced as securing some other
and different engagement of the mortgagor resting in parol.

ID.—NOTE ACCOMPANYING MORTGAGE FOR INDEMNITY.—The fact that a note
absolute in form purports to be secured by a mortgagee, which is

expressly made by way of indemnity, is unimportant, and does not determine the liability of the mortgagor.

ID.—DELAY OF PLEDGEE TO SUE—PLEADING.—The mortgagee cannot recover upon the indemnifying mortgage for loss caused by failure of the pledgee of the securities to sue earlier thereupon, without alleg ing and proving such loss.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order denying a new trial. Joseph P. Jones, Judge.

The facts are stated in the opinion.

Stanly, Hayes & Bradley, and W. F. Hall, for Appellant.

Gunnison, Booth & Bartnett, and W. S. Tinning, for Respondent.

BRITT, C.—Suit to foreclose a mortgage executed to Bernardo Fernandez, the plaintiff, by defendant Patrick Tormey, on August 23, 1893. At that time the Union Stock Yard Company of San Francisco, a corporation, was indebted to Fernandez in the sum of $50,742.12, to fall due, with accruing interest, on August 28, 1893; which indebtedness was evidenced by the promissory note of a certain third person, a mortgage of lands securing the same, and a contract in writing whereby said corporation had assumed and agreed to pay the amount unpaid on said note to Fernandez, and he had released the original maker thereof from personal liability thereon.

Said Tormey, having occasion to raise a considerable sum of money, borrowed $45,135.60 from one John A. Stanly, and $16,-000 from the Commercial Bank of Vallejo. On said August 23, 1893, the following transactions occurred at the office of said Stanly: Tormey and Fernandez—the latter acting for the accommodation of the former—executed two joint notes, for the sum of $8,000 each, to the said Commercial Bank, payable with interest one year from date, and to secure one of them Fernandez made to the bank a mortgage of land owned by him; as security for the other Fernandez and Tormey made a mortgage to the bank of lands owned by them as tenants in common; Tormey executed his note to Stanly for said sum of $45,135.60; and Fernandez made to one Henry Rogers a formal written as-

signment of the aforesaid note, mortgage, and contract of the stock yard company, he being informed that Rogers took the same as pledgeholder to secure the said note of Tormey to Stanly; Tormey also deposited with Rogers, for the same purpose, other evidences of debt to a large amount. At the same time and place Tormey made to Fernandez the note and mortgage on which the latter sues in this action.

It is first stated in this mortgage that for the purpose of securing payment of a promissory note dated August 23, 1893, copied at length, by which in terms Tormey promised to pay Fernandez the sum of $62,742.12 on or before two years after date, with interest, etc., the mortgagor mortgages to the mortgagee certain described tracts of land. It is then provided that "This mortgage and the note secured hereby are given to secure the said Fernandez against any loss which he may ever sustain by reason of the transfer and assignment by him to Henry Rogers of" the aforesaid obligations of the stock yard company, particularly described; also, "to indemnify and save the said Fernandez harmless from any loss or liability which he may ever sustain by or on account of the execution by him" of said notes and accompanying mortgages for $16,000 to the Commercial Bank. It was further stated in the mortgage that said assignment to Rogers was given as security for the payment of Tormey's note to Stanly, and that said notes to the Commercial Bank were given for money advanced by the bank to Tormey. The mortgage was read to Fernandez and he made no objection to any of its provisions.

On June 24, 1895, Rogers instituted an action in the proper court to foreclose the said mortgage of the Union Stock Yard Company; Fernandez was joined with the company as a defendant, but no personal judgment was asked against him (*Haber v. Brown*, 101 Cal. 445); and no steps seem to have been taken in that action beyond filing a complaint. On June 27, 1895, said stock yard company, on its own petition in insolvency, was adjudged an insolvent debtor. On November 19, 1895, Fernandez paid to the Commercial Bank $12,400, satisfying the amount due on the mortgage he had made to the bank for Tormey's accommodation on land owned by himself in severalty, and paying also one-half the amount due on the mortgage which cov-

ered land held by himself and Tormey in common. It does not appear whether Tormey's note to Stanly is yet due.

November 20, 1895, Fernandez commenced this action. After trial the court found as facts, among other things, that by the assignment of August 23, 1893, the plaintiff conveyed and transferred to Rogers all his right and interest in and to said obligations of the stock yard company; and that in consequence thereof plaintiff has sustained a loss of $50,742.12, the value of those securities at the date of the assignment, together with interest from that date; that after the commencement of this action Tormey tendered to plaintiff repayment of the sums plaintiff had paid to the Commercial Bank, and interest thereon, together with the note duly canceled and certificate of satisfaction of the mortgage to said bank which plaintiff had discharged in part only, also a re-assignment by Rogers to plaintiff of the said obligations of the stock yard company, etc.; and offered to pay plaintiff's expenses of the action, including such reasonable counsel fee as the court might fix; which tender was followed by deposit in court of the money and instruments tendered. The court further found that the value of said stock yard company securities, after they were assigned to Rogers by plaintiff, depreciated from twenty to thirty-three per cent, and that said tender included nothing on that account. From these and other findings the court concluded that Tormey is indebted to plaintiff on the note and mortgage in suit to the full amount of the principal thereof—$62,742.12—and a further sum of $10,176.41 for interest thereon; and for these sums, with counsel fees, etc., a decree of foreclosure was rendered.

On appeal defendants raise no question as to the right of plaintiff to sue for the enforcement of the mortgage to the extent necessary to reimburse him for the money he paid to the Commercial Bank, with interest and expenses; nor does plaintiff dispute that Tormey's tender after suit brought covered all the detriment he sustained in that behalf. The principal contest in this court relates to the effect and consequences of plaintiff's assignment to Rogers of the stock yard company's paper. The express purpose of the mortgage in suit is security to plaintiff against "loss which he may ever sustain" on that account; hence, it was essential that he should have sustained actual loss,

as distinguished from liability thereto, resulting proximately from said assignment, in order to vest him with any right of action on that branch of the mortgage. (Civ. Code, sec. 2778, subd. 2; *Oaks v. Scheifferly*, 74 Cal. 478; *Elder v. Kutner*, 97 Cal. 490; *Ide v. Spencer*, 50 Vt. 293; *Shepard v. Shepard*, 6 Conn. 37.) It is the main proposition of plaintiff, as we understand the argument of his learned counsel, with which the findings of the trial court seem to be in accord, that by the immediate effect of said assignment plaintiff lost the securities which were the subject thereof, and that the mortgage here sued on was intended to secure to him absolutely payment for the same at the price of $50,742.12, the amount unpaid thereon on August 23, 1893. Plaintiff testified at the trial to some parol negotiations had with him by Tormey, prior to the date just mentioned, which testimony, although neither clear nor very convincing, may yet perhaps, if it could be considered, tend to sustain such contention.

The case, however, cannot be reconciled with that view. Nothing can be clearer on the evidence than that Rogers, on his part, took the obligations assigned to him by plaintiff to hold in pledge for the payment of Tormey's note to Stanly. We may concede, as counsel insist, that the statement in the mortgage to that effect does not estop plaintiff (*Osborne v. Endicott*, 6 Cal. 149; 65 Am. Dec. 498); but the statement harmonizes with all the parol evidence of the occurrences at the time of the assignment, and its correctness, as concerns Rogers and Stanly at least, must be said to have been established without conflict. It of course follows that plaintiff was not divested of his title in the assigned securities by force merely of the assignment. (Civ. Code, secs. 2888, 2986.) Now it may be admitted that there might have been such a contract between plaintiff and Tormey that, as to them, the assignment to Rogers would be held equivalent to an outright sale of the stock yard company securities, Tormey becoming responsible to plaintiff for the purchase price. But security for any such responsibility is not included within the terms of the mortgage interpreted in the light of attending circumstances; the provision that "this mortgage and the note secured hereby are given to secure the said Fernandez against any loss which he may ever sustain by reason of the transfer and

assignment by him to Henry Rogers" of the Stock Yard Company's obligations, is of the essence of the contract and estops both parties; its natural import is indemnity against loss contingent and not yet accrued; that such agreements shall have a prospective operation, when a different intent is not expressed, is the rule of law concerning their interpretation (*Warwick v. Hutchinson*, 45 N. J. L. 61). It is beyond peradventure that the mortgage provides for indemnity only as it relates to the hypothecation of plaintiff's property and credit to the Commercial Bank, and it is reasonable to suppose that if any different purpose had been intended as regards his property assigned to Rogers such different purpose would have been made clear; *noscitur a sociis.* Plaintiff can enforce the mortgage only to accomplish the object for which it was made; so far as the matter under view is concerned, such object appears plainly from the terms employed, understood in connection with the concurrent fact that Rogers on his part held the assigned obligations in pledge, to have been indemnity against the consequences of such pledge, and not security for some other and different engagement of Tormey with plaintiff resting in parol (Code Civ. Proc., sec. 1856). The circumstance that the mortgage note was absolute in its terms is unimportant. (*Vogan v. Caminetti*, 65 Cal. 438.) Hence, for any purpose of the mortgage plaintiff must be regarded as a pledgor of the evidences of debt he delivered to Rogers; as pledgor he did not part with his interest therein, and the findings that he did and so sustained loss to the amount of the value thereof are contrary to the evidence.

Regarding plaintiff's further insistence that the action of Rogers in suing on the pledged securities was an application of the same on the debt of Tormey to Stanly, and, virtually, a conversion of the same, we observe that as pledgeholder it was Rogers' right to collect the money which became due on said securities, and his suit for that purpose was not a conversion of them. (Civ. Code, secs. 2996, 3006; *McArthur v. Magee*, 114 Cal. 126.)

Loss to plaintiff is also said to have accrued from the facts in evidence that subsequently to the assignment to Rogers the Stock Yard Company was adjudged insolvent, the land on which its debt to plaintiff was secured depreciated in market value, and the further fact assumed (whether with or without proof we

need not decide) that the statutory recourse for such debt against the stockholders of said company was lost by delay of Rogers to sue thereon.    There was, however, no evidence that the mere fact of decline in market value of the encumbered land was in any degree attributable to the said assignment; so far as appears the decline would have been the same had the assignment not been made; the indefinite finding of depreciation in that behalf "from twenty to thirty-three per cent" evidently had reference only to the sufficiency of Tormey's tender, and was not designed as the basis of any part of the affirmative judgment for plaintiff. As to the asserted consequences of neglect of Rogers to proceed against the stock yard company or its stockholders, there was neither allegation in the complaint, nor finding by the court, of such neglect or of loss for that reason; on the contrary, it was a postulate of both the complaint and the findings that if the assignment itself by plaintiff to Rogers did not deprive the former of his property in the securities, yet such result followed when Rogers at length sued on the same, and that his action in suing at all was an invasion of plaintiff's rights.    Plaintiff could not recover for loss caused by Rogers' failure to sue earlier without alleging and proving it.    (*Thomas v. Davis* (Tex. Civ. App. 1897), 39 S. W. Rep. 579; *Northwestern Nat. Bank v. Thompson etc. Mfg. Co.*, 71 Fed. Rep. 113; *Sampson v. Fox*, 109 Ala. 662; 55 Am. St. Rep. 950.)

Upon the record before us plaintiff was entitled to no recovery beyond the sums of money tendered to him by Tormey after suit brought, together with reasonable attorneys' fees to the time of tender.    The judgment and order denying a new trial should be reversed.

Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

Temple, J., Henshaw, J., McFarland, J.