[Civ. No. 11839.   First Dist., Div. Two.   Jan. 21, 1942.]

THE EXCHANGE BANK (a Banking Corporation), Respondent, v. RUDOLPH J. SCHOLZ, Appellant.

234

Dion R. Holm and Jack L. Blaine for Appellant.

Geary & Tauzer and A. Dal Thomson for Respondent.

DOOLING, J. pro tem.—This is an appeal from a judgment foreclosing a mortgage made to secure a promissory note and providing for a deficiency judgment against the maker of the note, defendant Rudolph J. Scholz.

The note in the principal sum of $6,000 and the mortgage were executed by defendant Rudolph J. Scholz in favor of defendant Edward F. Sophey on November 3, 1927. The note by its terms was payable two years after date.

The defendants Sophey, who were engaged in business as

co-partners, on December 30, 1927, entered into an arrangement for the benefit of their creditors whereby they agreed to transfer to three trustees all of their assets. Pursuant to this agreement they endorsed and delivered the promissory note involved in this action to such trustees.

On March 1, 1929, the plaintiff Exchange Bank, the defendants Sophey and the three trustees of the trust for creditors above referred to entered into an agreement which provided that the defendants Sophey were indebted to the bank in the sum of $23,602.32, that defendants Sophey and the three trustees would convey to the bank certain described real property and would further transfer to the bank the note and mortgage here in suit, together with all accounts receivable of the business known as Sophey Bros., "notes receivable excepted," "it being the intention of the parties hereto that the first party (bank) will take the assets herein set forth and liquidate them as rapidly as possible."

On its part the bank agreed to pay the Sopheys the sum of $1,000, and to release and discharge any claim that it might have or assert against any and all assets of the Sopheys not mentioned in the agreement, and that such assets might be transferred to a corporation to be formed free from any claim of the bank.

Pursuant to this agreement the trustees endorsed the promissory note and delivered it to the bank and the Sopheys executed and delivered to the bank an assignment of the mortgage.

At the outset appellants attack the transfer of the note and mortgage to the bank on the ground that the trustees for creditors could not give good title to the bank without the creditors' consent. This argument overlooks the express provisions of the agreement by which the trust for creditors was created. That agreement contained the following provisions: "Fourth: This Trust shall be irrevocable for a period of One (1) year next after the execution of this Indenture, excepting however, that this Trust Agreement may be declared imperative (inoperative?) in the event all of said creditors' claims and all other claims be paid and discharged before the expiration of said One (1) year period. . . .

"Twelfth: It is further understood and agreed that upon the payment and discharge of all claims, charges and expenses . . . and the payment and discharge of all the claims of said creditors, together with any and all other costs . . . said Trus-

tees shall pay over unto said Trustors all moneys in their possession, and reconvey unto said Trustors any and all real and/or personal property held by them, and then and in that event, and/or upon the expiration of said One (1) year period, this trust shall forever cease and terminate.''

Under the plain terms of the agreement the trust was created for the period of one year and automatically terminated at the end of that period. The trustees had no further duty than to reconvey all the property held by them as trustees to the Sopheys. That being so it is immaterial that they endorsed and delivered the promissory note directly to the bank. They did so by the agreement and direction of the payee and owner of the promissory note. In legal effect the result was the same as if defendant Edward F. Sophey had himself delivered the note properly endorsed to the bank.

This conclusion disposes of a host of arguments based upon the theory that the bank did not become a holder in due course because of the lack of authority of the trustees to transfer the note to the bank, and the specific arguments based on this premise need not be specially noticed.

One of the trustees, Williams, was also a vice president of the bank. It is urged by appellants that the transfer of the note is governed by the settled rule that a trustee cannot deal with the trust property for his own advantage or convey it to himself. What we have said likewise disposes of that contention. The trust for the creditors having terminated the only fiduciary duty owed by Williams was to the Sopheys. The transfer of the note to the bank was the voluntary and deliberate act of the Sopheys.

The negotiation of the note was for value. The bank's release of its claims against other assets of the Sopheys that they might otherwise have looked to for satisfaction of their debt standing alone would have been sufficient for that purpose. Coupled with this was the antecedent debt of the Sopheys to the bank in excess of $23,000 which by agreement was to be satisfied *pro tanto* by the ''liquidation'' of the note. It is the settled rule that an antecedent debt is valuable consideration for the negotiation of a promissory note. (*Adolph Ramish Inc.* v. *Woodruff*, 2 Cal. (2d) 190, 203 [40 Pac. (2d) 509, 96 A. L. R. 1146], and cases there cited.)

The fact that the endorsement by the trustees to the bank was ''without recourse'' did not prevent the bank from becoming a holder in due course. (10 C. J. S. 836; *Ross* v.

*Title Guarantee Etc. Co.,* 136 Cal. App. 393 [29 Pac. (2d) 236].)

The claim that the transfer of the note was not in the ordinary course of business, if tenable under the negotiable instrument act (10 C. J. S. 791; Civil Code, sec. 3133), is based upon the claims that a trustee cannot deal with himself and that the trustees had no power to negotiate the note. These contentions have already been disposed of.

The court did not err in finding that this promissory note and mortgage were not excluded by the language added to the agreement of March 1, 1929, ''notes receivable excepted.'' These words were inserted in the provision providing for the transfer to the bank of accounts receivable. The entire paragraph providing for the transfer of this particular note and mortgage to the bank was left in the agreement untouched.

The bank agreed to a proposal made by the Sopheys in a letter dated April 27, 1929, ''that the property described in the agreement dated March 1, 1929, will not be sold without giving 45 days' written notice to Sophey Bros. for the purpose of enabling them to secure a better price, if possible.'' If this agreement was supported by any new consideration, it obviously referred to the parcels of real property transferred to the bank, and not to this note and mortgage. The property covered by the mortgage could not be sold by the bank, but only by a court on foreclosure, and the purpose expressed of enabling Sophey Bros. to get a better price if possible could only apply to sales of property which the bank had power to make. The bringing of the foreclosure action would itself give Sophey Bros. ample time to get a better price at the foreclosure sale, if they were in a position to do so.

If the note and mortgage were held in pledge that would not prevent the bank from bringing this action. The agreement under which they were transferred to the bank provided that the bank should take the assets described ''and liquidate them as rapidly as possible.'' In any event a pledgee may collect any evidence of debt pledged to him when due. (Civil Code, sec. 3006; *Fernandez* v. *Tormey,* 121 Cal. 515, 520 [53 Pac. 1119]; *Security-First National Bank* v. *Spring St. Properties, Inc.,* 20 Cal. App. (2d) 618 [67 Pac. (2d) 720].)

The transfer of the note and mortgage to the trustees was not void under Civil Code, section 3440. The section spe-

cifically excludes "things in action" and the note and mortgage cannot under any stretch of the imagination be regarded as a part of Sophey Bros.' stock in trade.

A large part of appellants' brief is taken up with the claim that the note and mortgage in question were not what they seemed to be, but by reason of an agreement between Scholz and Sophey the deed to Scholz was in fact a mortgage to him to secure the repayment to Scholz of the amounts advanced and paid by him to Sophey. The bank being a holder in due course would only be subject to this defense if it took with notice. Sophey testified that he advised Williams of the true effect of the note and mortgage before the transfer to the bank but Williams denied this. The court chose to believe Williams' testimony on this subject. The same may be said of payments claimed to have been made to Sophey. The bank credited all payments of which it had knowledge. (10 C. J. S. 1125.)

There is nothing in the point that because of any agreement between the Sopheys and Scholz or Sopheys' occupancy of the land a deficiency judgment should not have been given against Scholz. The obligation was Scholz's and he could not relieve himself of it without the bank's consent. (Sec. 1457, Civil Code.)

Appellant Scholz claims that he should have had judgment against the Sopheys on a cross-complaint. The record shows the cross-complaint was dismissed by Scholz during the trial. Despite the dismissal of this and another cross-complaint against the bank "without prejudice" the court made findings that their allegations were untrue. While the judgment is silent on these matters, appellant Scholz should not be prejudiced by allowing these findings to stand.

Many other claimed errors are briefly suggested by appellant. We have read the transcript with these claims in mind and find none of them well taken. It would expand this opinion to unreasonable length to deal with each of such claims *seriatim*.

The trial court is directed to strike from the findings those findings upon issues presented only by the cross-complaints of Rudolph J. Scholz which were dismissed. The judgment is affirmed with costs on appeal to respondent Exchange Bank.

Nourse, P. J., and Sturtevant, J., concurred.