**In re S.O.A.W. ENTERPRISES, INC., a corporation, Debtor.**

**CASTLE ROCK INDUSTRIAL BANK, Plaintiff,**

v.

**S.O.A.W. ENTERPRISES, INC., Defendant.**

**S.O.A.W. ENTERPRISES, INC., Counter-Plaintiff,**

v.

**CASTLE ROCK INDUSTRIAL BANK, Counter-Defendant,**

**The Travelers Ins. Co. and The Prospect Company, Intervenors.**

**Bankruptcy No. 5–82–00930–E. Adv. No. 5–82–0574E.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Aug. 11, 1983.

John H. Tate, II Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., for debtor/defendant and counter-plaintiff, S.O.A.W. Enterprises, Inc.

Elizabeth J. Greenberg, Sherman & Howard, Denver, Colo., Garvin P. Stryker, Schenker, Rosenheim & Schenker, San Antonio, Tex., for plaintiff and counter-defendant, Castle Rock Industrial Bank.

William A. Jeffers, Jr., Groce, Locke & Hebdon, San Antonio, Tex., for intervenors, The Travelers Ins. Co. and The Prospect Co.

Louis LeLaurin, III, Robert L. Barrows, San Antonio, Tex., for Jewel F. Robinson, John Martin Davis, Sr. and James K. Rushing.

## MEMORANDUM OPINION

JOSEPH C. ELLIOTT, Bankruptcy Judge.

### I.

This adversary proceeding is a Complaint for turnover of property and a demand for an accounting originally filed by Castle Rock Industrial Bank ("Castle Rock") against the Debtor-in-Possession, S.O.A.W. Enterprises, Inc. ("S.O.A.W."). In its Answer to the Complaint, S.O.A.W. counterclaimed, alleging that Castle Rock was an unsecured creditor, and requesting that any lien claims of Castle Rock be avoided and preserved for the estate and all escrowed funds released to the Debtor-in-Possession.

The Travelers Ins. Co. and The Prospect Co. intervened herein as parties in interest, and have filed briefs which generally support the position of S.O.A.W.

The parties do not dispute the jurisdiction of this Court to decide the issues, pursuant to either statute or Local Orders and Rules.

This Chapter 11 case was initiated voluntarily by S.O.A.W., which filed its petition under Chapter 11 of the Bankruptcy Code on October 25, 1982. An Order of Relief was entered on that date, and S.O.A.W. was, pursuant to an Order of this Court, appointed Debtor-in-Possession.

Castle Rock is a Colorado Industrial Bank and is a creditor of S.O.A.W.

S.O.A.W. is in the business of purchasing large tracts of rural land, subdividing those tracts into smaller parcels, and selling the smaller parcels to purchasers pursuant to documents entitled "Agreement for Deed". These "Agreement for Deed" documents are real estate sales contracts of the type commonly referred to in Texas as "contracts for deed". Under each Agreement for Deed, S.O.A.W. retains legal title, and a deed is delivered to the purchaser or vendee only after full payment of the purchase price by the vendee. S.O.A.W., as Debtor-in-Possession, owns and operates twelve (12) large ranches. On the 12 ranches there are approximately 1,600 outstanding Agreements for Deed.

In order to generate operating capital, on October 11, 1977, Castle Rock and S.O.A.W. entered into a financing arrangement and the first of a series of collateral transfers. This arrangement, styled by Castle Rock as a "Participation Agreement", and the numerous subsequently executed transfers of individual Agreements for Deed in connection therewith, form the basis for this lawsuit. During the period following October 11, 1977, the original "Participation Agreement" was modified on several occasions, but the original agreement remained largely in full force and effect. Under the terms of that agreement, Castle Rock "participated" in a large number of the Agreements for Deed executed by and between S.O.A.W. and numerous vendees. As provided in the original Participation Agreement, the "participation" of Castle Rock in each of these Agreements for Deed was 30% of the amount due to be paid by the vendee to S.O.A.W.

As of October 25, 1982, Castle Rock, as set forth in Castle Rock's Exhibit "3", had a total "portfolio" of $856,623.13, said "portfolio" consisting of the total of its "participations" in the S.O.A.W. Agreements for Deed. Under the terms of the Participation Agreement, Castle Rock "purchased" a "participation" from S.O.A.W. by remitting funds to S.O.A.W. Castle Rock took possession of the various "participated" Agreements for Deed, and until it received its 30% was entitled to receive 100% of all payments made by the vendees to S.O.A.W. pursuant to these Agreements for Deed. S.O.A.W. serviced these Contracts for Deed; the proceeds or an amount equal to the proceeds from these "participated" Agreements for Deed, except for a small administration fee, was paid to Castle Rock. Under the terms of the "participation", upon repayment of the "participation", Castle Rock was to surrender the Agreement for Deed to S.O.A.W., which would thereafter

receive the balance of the payments due under each particular Agreement for Deed. At all times, the real property concerned remained the property of S.O.A.W., subject to various deed of trust liens, including those of Intervenors, The Travelers Ins. Co. and The Prospect Company, and the rights of the respective Agreement for Deed vendees. Although the "participation" and a subsequent document entitled "Processing Specifications for Lock Box Banking Service" required that payments under Agreements for Deed would be processed through what is commonly referred to as a "lock box" arrangement, evidence was offered at trial by Defendant, which was not contradicted, that this lock box arrangement was not followed and had been waived by Castle Rock.

## II.

When S.O.A.W. filed bankruptcy, Castle Rock immediately filed an action to compel S.O.A.W. to continue to remit funds collected from vendees directly to Castle Rock. In an action styled, "Complaint to Compel Debtor-in-Possession to Turnover Property and Deliver an Accounting", Castle Rock alleged that the Participation Agreement constituted the purchase by Castle Rock of "participations" in the Agreements for Deed. In that pleading, Castle Rock alleged that S.O.A.W. had no interest in the various Agreements for Deed until Castle Rock's investment or "participation" was fully repaid. Based upon these premises, Castle Rock requested the Court to order a turnover of all of the proceeds or payments received under the Agreements for Deed, and for an accounting. Castle Rock premised its argument (that the Debtor had no interest in these properties) on § 541(d) of the Bankruptcy Code, which section provides that the debtor's estate does not include as an asset certain types of property previously equitably transferred in the secondary mortgage market.

In its answer, Defendant denied the applicability of § 541(d) of the Bankruptcy Code to this transaction, and alleged, as an affirmative defense, that the Participation Agreement actually constituted a disguised loan, or a series of disguised loans. In addition, S.O.A.W. filed a counterclaim alleging that the Participation Agreements represented disguised, unsecured loans because Castle Rock had failed to properly perfect its interest in the Agreements for Deed, which S.O.A.W. alleged were actually the collateral for the series of disguised loans. At trial, both parties presented evidence in the form of documents and witnesses. Not surprisingly, the President of S.O.A.W. and the President of Castle Rock differed on their view of the transaction. Both parties presented expert witnesses on Participation Agreements and banking practices who also differed in their conclusions. Prior to and subsequent to the trial in this matter, both parties have presented extensive written briefs for the court's consideration.

## III.

### APPLICABILITY OF § 541(d)

After reviewing the evidence and considering the testimony of all of the witnesses, the Court finds that the "Participation Agreement" between S.O.A.W. and Castle Rock was a loan transaction, rather than the sale by S.O.A.W. to Castle Rock of participations in the Agreements for Deed within the contemplation of § 541(d). Under Paragraphs 2 and 3 of the Participation Agreement, Castle Rock received a greater rate of repayment and return than S.O.A.W. received under the Agreements for Deed. It is apparent from the facts that S.O.A.W. did not sell at a discount 30% of the Agreements for Deed. The rate of repayment and the return provided for Castle Rock are incompatible with the concept of participation, and more compatible to that of a loan and a debtor/creditor relationship.

The Court also finds that this transaction was structured so that Castle Rock ran no real risk. A "participant" in a loan normally assumes the same risk as that of the person selling the participation or generating the loan. In this transaction, the evidence showed that both S.O.A.W. and its

President, Warren Wimberly, personally guaranteed the return to Castle Rock of its investment and guaranteed the interest to be generated by investment. Thus, Castle Rock "participated" in no risk of non-payment by the Agreement for Deed vendees because it did not look to them for repayment. The Court holds that § 541(d) is not applicable to the transactions which are the subject of this Complaint. Therefore, the Court holds that the Agreements for Deed which were subject to the Participation Agreement were, at the time of the petition herein, property of the estate of the Debtor-in-Possession. *See generally, In re Columbia Pacific Mfg., Inc.,* 20 B.R. 259 (Bkrtcy.W.D.Wash.1981).

## IV.

### COUNTERCLAIM OF DEBTOR–IN–POSSESSION TO AVOID LIEN

■ Again, after considering the testimony of the parties and the evidence presented in this proceeding, the Court is persuaded that the parties hereto intended the "Participation Agreement" between the parties to be a loan transaction. The President testified that this transaction was entered into with Castle Rock in order to generate needed cash. As detailed above, the Court has already found, in connection with Castle Rock's arguments concerning § 541(d), that the transaction was not consistent with the concept of a sale of a participation interest in the Agreements for Deed. Rather, the Court finds that the Agreements for Deed were pledged as collateral for the repayment of a loan. Plaintiff's Exhibit "1", the Participation Agreement, in Paragraph 1 discusses a "sale of participation", but, in reality contemplates the making of a loan to be secured by collateral. The Participation Agreement, at Paragraphs 6 and 7, further makes the nature of this transaction quite clear. Paragraph 6 of the Participation Agreement, styled "Default", contains an absolute obligation on the part of S.O.A.W. to "repurchase" the investment of Castle Rock in any agreement for deed which is in default. In the alternative, should S.O.A.W. breach

that "covenant" to repurchase, S.O.A.W. was obligated to surrender to Castle Rock all of S.O.A.W.'s remaining rights in all other agreements for deed. Paragraph 8 of the Participation Agreement contains the personal guarantee of Warren Wimberly, President of S.O.A.W., mentioned above.

This Court, therefore, finds that this loan transaction, euphemistically styled "Participation Agreement", consists of an ordinary debtor/creditor relationship. In addition, the Court finds that the Participation Agreement creates a security interest in the various Agreements for Deed. The security interest, which is essentially the right to collect all sums due from vendees under the various Agreements for Deed, is thus a security interest governed by the laws relating to such security interests, which, generally speaking, are to be found in Article 9 of the Uniform Commercial Code. Article 9 has been adopted in both Colorado, the state in which Castle Rock does business, and Texas, the state in which S.O.A.W. does business. Further, the Court finds (as the parties stipulated in Court) that no UCC–1 financing statement(s) has ever been filed by Castle Rock in either Colorado or Texas.

Were these Participation Agreements transactions within the secondary mortgage market as alleged by Castle Rock, the sale of such participations would place these Agreements for Deed outside of the estate of the Debtor-in-Possession. However, the Court determines, as a matter of law, that § 541(d) of the Bankruptcy Code applies only to transactions truly within the secondary mortgage market where the bankrupt debtor is a mere legal holder of a right under a deed of trust or mortgage, having transferred all equitable interest in the mortgage or deed of trust to a third party in the business of purchasing mortgages or deeds of trust. Such a holding is supported by and consistent with the legislative history of § 541(d). Since, as both a matter of fact and law, § 541(d) does not apply to the transactions which are the subject of this litigation, the Court holds that these Participation Agreements are property of the estate.

Further, since the Court has found as a matter of fact that these Participation Agreements were in reality loans secured by a pledge of Agreements for Deed, the Court further holds that these transactions were secured transactions governed by Article 9 of the Uniform Commercial Code as enacted in the State of Texas, at Chapter 9 of the Texas Business & Commerce Code.

Article 9 of the U.C.C. as enacted in Texas, applies to this transaction because the collateral pledged (*i.e.* the right to a stream of payments under an Agreement for Deed) was at all times essentially located in the State of Texas. The property generating the Agreements for Deed was located in Texas. The Agreement for Deed holders were, in large part, citizens or residents of the State of Texas, and pursuant to each individual agreement for deed, were obligated to make their payments to S.O.A.W. at its offices in the State of Texas. Therefore, under § 9.103, the choice of law is clear, and Texas law applies to these transactions.

The Court further finds that these Agreements for Deed are to be classified as "general intangibles" as that term is defined at § 9.106 of the Texas U.C.C. After reviewing the extensive briefs and pleadings of the parties, the Court has concluded that it is impossible to characterize Agreements for Deed as "instruments". "Instruments", as defined at § 9.105(a)(9) of the Texas U.C.C., must evidence a right to the payment of money. An examination of the Agreements for Deed, and in particular Plaintiff's Exhibit 9, at the sixth paragraph on Page 1, indicates that the Agreements for Deed created no right on the part of S.O.A.W. to unconditionally demand the payment of money. These Agreements for Deed are typical contracts for the sale of real estate, and a breach of the contract by the vendee/purchaser merely entitled the vendor/seller to retain monies previously paid as liquidated damages for the breach of an executory contract and to cancel the Agreement for Deed.

The Agreements for Deed cannot be "instruments" for several additional reasons.

First, § 105(a)(9) states that an instrument may not contain a security agreement, and the Agreements for Deed specifically state that, as security for the breach of the executory Agreement for Deed, the vendor/seller, S.O.A.W., is entitled to retain both monies paid and any structures built upon the property subject to the Agreement for Deed. Also, an instrument is a document which is transferred in the ordinary course of business with necessary endorsements. While Agreements for Deed may be assigned by endorsement, or otherwise, the Court does not believe, that as a matter of law, an Agreement for Deed can be assigned in and of itself. The assignee of an Agreement for Deed, who does not receive, at the time of the assignment of the Agreement for Deed, title to the real property which is the subject of the Agreement for Deed, could not thereafter perform his obligations under the Agreement for Deed. As a matter of law, the Court holds that the essential difference between the Agreements for Deed and an ordinary instrument is that an "instrument" is not usually considered an executory contract. Under an "instrument", one party has wholly performed—the lender. The other party, the obligee or debtor, is thereafter obligated to perform in some manner in order to repay the value represented by the instrument, which value he has already received. With an Agreement for Deed, the contract remains wholly executory. The executory nature of such contracts for deed is expressly recognized by the Bankruptcy Code itself at § 365(i) [11 U.S.C. § 365(i)]. The party holding the Agreement for Deed is entitled to receive money from the vendee/purchaser only so long as he can perform the obligations of the vendor/seller. Here, it is difficult to see how, by merely assigning the right to receive payments under the Agreements for Deed, Plaintiff Castle Rock Industrial Bank could have taken that assignment, together with the assigned or attached Agreement for Deed, and thereafter made an enforceable demand for the payment of money upon the Agreement for Deed vendee/purchaser. Without an assignment of the underlying real property,

the Court does not believe that Castle Rock Industrial Bank could have insisted upon payment.

The Court also holds that the Agreements for Deed cannot be characterized as either accounts or chattel paper. While the Agreements for Deed do closely resemble accounts in the sense that the Agreements for Deed were generated by the sale of S.O.A.W.'s "inventory", that inventory consists of real property. The U.C.C. states specifically, at § 9.106, that accounts are generated by the sale of "goods" or personal property. The Court finds, for the same reason, that the Agreements for Deed do not constitute "chattel" paper as that term is defined at § 9.105(a)(2). Chattel paper can also only result from the sale of "goods". Additionally, the Court would note that chattel paper is generally considered to consist of an "instrument", usually a note, coupled with a security agreement in one document. As discussed above, the documents referred to herein as Agreements for Deed, while they contain a collateralization or security agreement clause, do not also contain an absolute promise to pay money.

Were "accounts" or "chattel" paper the only categories available for characterizing this collateral, the Court would find it necessary to address the problem of the "goods" requirement for both of those types of collateral. While it might be possible to apply the UCC in spirit, if not in letter, or to apply the UCC by analogy, the Court finds that this is not necessary. The UCC provides its own solution for the dilemma of characterization. Where collateral, or an item or interest clearly given as collateral, does not clearly fall into one of the definitions provided by the Code, which include "instruments", "goods", "chattel paper", "documents", and "accounts", the Code provides a catchall—*general intangibles*", as defined at § 9.106. This Court finds that Agreements for Deed do not clearly fit into the "pigeonhole" definitions given for any of the traditional types of collateral recognized by the Code, and, therefore, these assets must go into the "pigeonhole" at the end of the line, "general intangibles".

Having characterized the Agreements for Deed as "general intangibles", the Court finds, as stated in Comment 1 to Section 9.304, that general intangibles may only be perfected by the filing of a financing statement. Having failed to file a financing statement as of the date of the petition in this case, Plaintiff Castle Rock Industrial Bank was an unperfected secured creditor. Its possession of the Agreements for Deed, standing alone, is not sufficient under law to perfect its lien.

This analysis is supported by all applicable case law. In the three cases in point cited to the Court in the Briefs of the parties, the holdings are clear. Each holds that where a contract or Agreement for Deed is pledged by the vendor to a third party, and the vendor does not also transfer any rights in the underlying real property to the third party, the third party, to become a perfected secured creditor, must file a financing statement. These cases did not attempt to "characterize" collateral, but the holdings clearly state this rule. *See, In re Equitable Development Corp.*, 20 U.C.C. Rept.Serv. 1349 (S.D.Fla.1976); *In re Southworth*, 22 B.R. 376 (Bkrtcy.Ct.D.Kan. 1982); and *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424, 29 UCC Rptr.Serv. 1625 (1980).

This Court is particularly persuaded by the opinion of United States District Court, Southern District of Florida, *In re Equitable Development Corp.*, 20 U.C.C.Rept.Serv. 1349. The facts in *Equitable Development* were essentially those in this case: debtor pledged to creditor sums due as "Accounts Receivable". The "accounts" were sums due under contracts for deed. Creditor did not perfect under Article 9, and debtor later filed bankruptcy. The debtor's Trustee thereafter sought to avoid the transfer of the "accounts", and the creditor moved to dismiss the Trustee's action. The Florida court began by finding that the parties had intended to create an interest in the debtor's personality, the "accounts" or contracts for deed. *Id.* at 1351–52.

The Court then held:

"The contract vendee's possible equitable interest in the land he is purchasing does not exempt a third party's security interest in the vendor's rights of collection from Florida's Uniform Commercial Code. Such an interest is created by contract, emanates from the rights and obligations of the executory contract between vendor and vendee, and must be characterized as personal property."

*Id.* at 1353.

Having earlier found, as a matter of fact, that the creditor had not perfected by filing, *id.* at 1351, the Court then held that the Trustee, having shown the creditor to be unperfected, had properly stated a cause of action for lien avoidance under the Bankruptcy Act of 1898, and denied the creditor's motion to dismiss.

In its answer to the Complaint filed by Castle Rock Industrial Bank, S.O.A.W. also asserted a counterclaim, alleging that Plaintiff Castle Rock Industrial Bank was an unperfected creditor as of the date of bankruptcy, and that, pursuant to § 544(a), as applied in Chapter 11 cases under the terms of §§ 1106 and 1107(a), that S.O.A.W., as Debtor-in-Possession, was entitled to avoid the lien of Castle Rock Industrial Bank, with such lien to be preserved for the benefit of S.O.A.W.'s estate under § 551 of the Bankruptcy Code. Having held that Plaintiff was an unperfected creditor as of the date of the petition herein and having held that these Agreements for Deed are to be considered property of the estate, it is the opinion of this Court, that the pledge and physical possession of the Agreements for Deed was not effective to perfect the security interest of Plaintiff Castle Rock Industrial Bank and said liens can be avoided by the Court for the benefit of the Estate.

Pursuant to Rule 7052 of the Bankruptcy Rules of Procedure, this Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law in support of the Judgment previously entered by the Court in this Adversary Proceeding.

The Clerk of this Court shall notify the respective parties and their attorneys of the entry of this Memorandum Opinion and enter this Memorandum Opinion in the docket.