In re **EXECUTIVE GROWTH INVEST-MENTS, INC., a California corporation, Debtor.**

**Martin A. RECHNITZER, Trustee, Plaintiff,**

v.

**James D. BOYD; Domenica Boyd; Mas De Hes; Maria De Hes; Keith Douthit; Mrs. Evelyn Feldman; Ms. Lillian Gross; David Nazzarro; James J. Sackett; Anthony M. Silva, Defendants.**

**Bankruptcy No. LA 82–04499–JA. Adv. No. LA 83–4662–JA.**

United States Bankruptcy Court, C.D. California.

May 23, 1984.

---

Robert A. Hessling, Cohen, England, Whitfield & Osborne, Oxnard, Cal., for defendant, Evelyn Feldman.

Edward B. Rasch, Santa Monica, Cal., Martha A. Warriner, Los Angeles, Cal., for plaintiff.

James T. Eichstaedt, Los Angeles, Cal., U.S. Trustee.

Edward M. Wolkowitz, Robinson, Wolas & Diamant, Los Angeles, Cal., for debtor.

## MEMORANDUM OF DECISION

JOHN D. AYER, Bankruptcy Judge.

### INTRODUCTION

This is a conflict over ownership of a fractional interest in a promissory note. The defendant argues that the interest is hers because she bought and paid for it. The trustee claims it for the estate, using the trustee's strong-arm power. Though assembling the facts is something like solving an N-dimensional Rubik's Cube, the law seems to me reasonably straightforward. I hold for the trustee.

### I

Executive Growth Investments, Inc. ("EGI"), the debtor in this Chapter 7 case, was an investment firm trading in real property and notes secured by real property. James D. Boyd, Evelyn Feldman ("Mrs. Feldman"), and the other eight defendants entered into contracts with EGI before bankruptcy. Mrs. Feldman is the only one of the ten still active in the case. Martin Rechnitzer is the bankruptcy trustee ("trustee").

My chronology begins before either EGI or Mrs. Feldman was involved with the property in dispute. John W. Chung owed money on a promissory note ("Chung note") secured by a trust deed on real property. A & W Properties ("A & W") later acquired these. On July 1, 1981, A & W executed a promissory note ("A & W note") in favor of EGI. As security, A & W purported to transfer to EGI a 34.83

percent interest in the Chung note and trust deed ("Chung security"). Pursuant to this agreement, A & W deposited the Chung note with EGI, and executed a written assignment of the trust deed, which was recorded August 29, 1981.

In September, 1981, EGI transferred the A & W note, together with the Chung security, to 10 investors in shares in 10 parallel agreements. Mrs. Feldman paid $10,000 and got an 8.2 percent interest as her share. She received a writing called "Assignment of Collateral Security Note," another called "CLTRLNOTE," and a third item headed "DISCLOSURE OF MATERIAL FACTS AND RISK FACTORS," but the A & W note (together with the Chung security) remained in the possession of EGI.

None of the transferees ever received any payments. On March 18, 1982, EGI filed a voluntary petition for reorganization under Chapter 11. On June 25, 1982, the case was converted to Chapter 7. The trustee later acquired substantially all the balance of the Chung trust deed—that is the portion beyond the 34.83 percent originally transferred to EGI from A & W. By court order, the trustee sold the A & W note and the Chung security and now holds the proceeds for distribution to claimants as their interests may appear. The trustee also filed this lawsuit, seeking to avoid the defendants' interest in the A & W note and the Chung security under Section 544(a) of the Bankruptcy Code, 11 U.S.C. § 544(a) (1982), the so-called "strong-arm power." *See generally* House Report No. 595, 95th Cong., 1st Sess. 370 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The dispute comes before me on cross motions for summary judgment.

Addressing these cross-motions, I first encounter some confusion as to exactly what "property" is claimed here. At one point, Mrs. Feldman seems to assume that the property in dispute is the Chung security. She argues that the trustee cannot avoid any transfer of the Chung security, because he expressly affirmed its validity when he sold it pursuant to court order. The trustee did indeed affirm the validity of the Chung security. But that is not the point. For what is in dispute here is not the validity of the Chung security, but interests in the A & W note. It was this same A & W note that the trustee sold pursuant to court order, and it is the proceeds of that sale that are in dispute now. If the previous transfer from EGI to Mrs. Feldman was valid, then the trustee must turn over to her the proceeds of his later sale (or at least her share of the proceeds). If the previous transfer was invalid, then he gets to keep the proceeds of his sale for the estate. The A & W note, of course, carries with it an interest in the Chung security. But as far as Mrs. Feldman is concerned, the A & W note is only a "second tier" interest, with the underlying Chung security serving as "first tier." All this is clear from the documentation that EGI furnished to Mrs. Feldman.

Recognizing that the rights in dispute concern the A & W note, I turn to the substance of the controversy. The trustee asserts that he may avoid the transfer of the A & W note, exercising his rights as a hypothetical judicial lien creditor under Section 544(a), 11 U.S.C. § 544(a). He argues that Mrs. Feldman holds no more than an unperfected security interest in the note. But assuming, for purposes of analysis, that Mrs. Feldman got an outright transfer, the trustee asserts that Section 544(a) still controls. Mrs. Feldman argues that there was nothing for the trustee to reach, on the theory that EGI absolutely transferred the A & W note to the defendants prior to the filing of the Chapter 11 case. She argues, in the alternative, that if this was a security transfer, then it was perfected and thus invulnerable under Section 544. Further, she argues that if EGI retained any interest prior to bankruptcy, it was "only legal title and not an equitable interest," and that such bare legal title is expressly excluded from the estate by Bankruptcy Code Section 541(d), 11 U.S.C. § 541(d) (1982).

I hold that the pre-bankruptcy transfer from EGI to Mrs. Feldman is voidable by the trustee under Section 544(a). I agree with the trustee that this was a transfer for security only. But I hold that it makes no difference, because Section 544(a) controls in any event. I further hold that the trustee's rights are not impaired by Section 541(d).

## II

I turn first to the strong-arm clause, 11 U.S.C. § 544(a) (1982). Section 544(a) provides that the trustee may avoid any pre-bankruptcy transfer that is voidable by a hypothetical judicial lien creditor. *See also* 11 U.S.C. § 101(27) (1982). I hold that the transfer is voidable as an unperfected security interest. But even if the transfer was not a security interest, I think the result is the same, because I think the trustee could also avoid it if it was an outright sale.

Assuming, first, that the transfer created a security interest, I turn to the California Commercial Code, California's version of the Uniform Commercial Code ("UCC").[1] The UCC provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien *creditor* before the security interest is perfected. Cal.Comm.Code § 9301(1)(b) (West Supp. 1984). *Cf.* Cal.Comm.Code Sec. 9301(3) (West 1984). A security interest in an instrument may be perfected only by the secured party's taking possession. Cal. Comm.Code Sec. 9304(1) (West Supp.1984). *Compare* Cal.Civ.Proc.Code Sec. 700.010 (judgment creditor's levy on instruments by taking possession). Mrs. Feldman did not take possession in this case. Hence, since the security interest remained unperfected at the time of filing, the trustee prevails. *In re Staff Mortgage and Investment Corp. (Greiner v. Wilke* (sic)), 625 F.2d 281 (9th Cir.1980); *In re Staff Mortgage and Investment Corp. (Huffman v. Wikle)*, 550 F.2d 1228 (9th Cir.1977).

Mrs. Feldman, as I have indicated, denies that this was a security transaction. But she asserts that if it was a security transaction, then the security interest was perfected. She bases this argument on the fact that EGI retained possession only for purposes of collection. She asserts that this made EGI her agent. Possession by her agent, she asserts, may be imputed to her. But this will not withstand analysis. The official comment to the UCC provides: "Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the *debtor* or person controlled by him cannot qualify as such an agent for a secured party." UCC Official Comment No. 2 to Section 9305, *In re Bruce Farley Corporation*, 612 F.2d 1197 (9th Cir.1980).

I have already said that I think this was a security transaction. But as I said before, I am not sure it makes any difference. The strong-arm clause works not only against security interests. Rather, it applies to "any transfer" voidable by a judicial lien creditor. I think this transfer might have been voidable by a judicial lien creditor even if it were an outright sale. This is so because EGI retained possession. The controlling doctrine derives from a California statute, which provides:

Every transfer of personal property ... made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while the transferor remains in possession....

Cal.Civ.Code § 3440 (West 1983).

This state statute creates a power that the trustee may exercise under Section 544(a). By definition, Section 3440 applies to an absolute transfer (as well, presumably, as to a security transfer). Therefore I may assume, for purposes of analysis, that there was an absolute transfer before

---

**1.** Since the California version and the UCC are on all material issues identical, I deliberately equivocate by calling the California version the "UCC."

the beginning of the case. Still, the trustee will prevail.

■ Mrs. Feldman argues that Section 3440 does not apply to an instrument such as the A & W note. She relies on a provision in Section 3440 that exempts "things in action." But an "instrument" is not a "thing in action" in the sense intended by Section 3440. *Cf.* Cal.Civ.Code § 953 (West 1983). The exemption is intended to exclude purely "abstract rights" that are not amenable to physical transfer. It has no application to the case of an instrument that is indispensable to the right transferred. *See, e.g.,* RESTATEMENT OF SECURITY § 1 (1941) (pledge of an intangible possible only where the intangible is "represented by an indispensable instrument"); Clark, *Abstract Rights Versus Paper Rights Under Article 9 of the Uniform Commercial Code,* Yale L.J. 445 (1975); Allen, *Things,* 28 Calif.L.Rev. 421 (1940). *Smith v. Harris,* 127 Cal.App.2d 311, 273 P.2d 835 (1954), refusing to apply Section 3440, involved just such an abstract right. *Exchange Bank v. Scholz,* 49 Cal.App.2d 232, 121 P.2d 526 (1942) and *Burkett v. Doty,* 176 Cal. 89, 167 P. 518 (1917), are not to the contrary. Neither involved an action by a creditor, or a party exercising the rights of a creditor. And *Exchange Bank* appears to have involved an earlier version of Section 3440, directed at bulk transfers of a merchant's stock-in-trade. *Compare* Cal.Civ.Proc.Code § 700.110 (West 1983) (levy on instrument by taking possession) *with id.* § 700.170 (levy on accounts by service on account debtor). *See also id.* § 697.530 (judgment lien by filing available for accounts, not for instruments).

### III

In the previous section I argued that the trustee prevails whether the transaction was a security transfer or an outright sale. If the transfer was a security transfer, then I think the trustee's rights under the strong-arm clause are beyond dispute. But I must acknowledge that if it was an outright transfer, then the authority is more slender. Hence, I think it is important to spell out just what I think it was, in fact, a security transfer.

I return to the UCC, particularly to Division 9, governing secured transactions. I hold, first, that the A & W note is an "instrument" that is "personal property" under the UCC. I next hold that the instrument is not excluded from UCC coverage by virtue of the fact that it is itself secured by real property. Finally, I hold that Division 9 directs me to treat this transfer as a security interest and not an outright sale.

I direct my attention to UCC Section 9102. This section says that Division 9 applies "to any transaction (regardless of form) which is intended to create a security interest in personal property including ... instruments." Cal.Comm.Code § 9102. Section 9105 says that " 'instrument' means a negotiable instrument ... or any other writing which evidences a right to payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." Cal.Comm. Code § 9105(1)(i). The A & W note clearly qualifies as an "instrument" under this definition. *Cf.* Cal.Civ.Proc.Code §§ 481.117 and 680.220 (West 1983).

Section 9102, just quoted, limits the scope of Division 9 to "personal property," and Section 9104(j) further specifies that Division 9 "does *not* apply ... to the creation or transfer of an interest in or lien on real estate." Cal.Comm.Code § 9104(j) (West 1983) (emphasis added). But UCC Section 9102(3) provides: "The application of this division to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this division does not apply." *Id.* § 9102(3). *Compare* UCC Comment No. 4 to Sec. 9–102. In other words, the A & W note, an instrument within the scope of Division 9, remains in Division 9 even though it is secured by an interest in the Chung trust deed.

Thus, the A & W note indisputably qualifies as the kind of *property* to which the UCC might apply. But the UCC only applies to a *security interest* in an instrument, not to an outright sale. *See* Cal. Comm.Code § 1201(37). *Cf. id.* § 9105 ("security agreement"). Mrs. Feldman, in asserting that this transfer was an outright sale, bases her argument chiefly on a reading of the documents—the form of the agreement. I think her argument on the issue is misdirected because I think the issue turns on the substance of the agreement, not the form. Looking to the substance, I think the agreement created a security interest. On the other hand, even assuming the issue turns on form, I think the result is the same.

To understand the issue, I return again to Cal.Comm.Code Section 9102. It provides that Division 9 applies "to any transaction (*regardless of its form*) which is *intended* to create a security interest" (emphasis added). Evidently, the task of the judge is to look past the expressed intention of the parties and find some purer intention behind the form. Surprisingly, having established the principle, the UCC gives very little guidance on just how to determine intent, aside from the bare conclusion set forth in Cal.Comm.Code § 1201(37) *supra.*

Lacking any express guidance from the UCC, it seems to me the dispositive issue may be: who bears the risk of loss in the event of non-payment? Traditionally, risk of loss has been regarded as one of the hallmarks of ownership. *See generally* Lawson, *The Passing of Property and Risk in Sale of Goods—A Comparative Study*, 65 Law Q.Rev. 352 (1949), 1 S. Williston, *The Law Governing Sales of Goods at Common Law and Under the Uniform Sales Act*, § 301 (2d ed. 1924). The drafters of the UCC clearly sought to break the nexus between ownership and risk of loss. *See N.Y. State Law Revision Comm'n 1954 Report* 160–61; Note, *Risk of Loss Under the Uniform Commercial Code*, 7 Ind.L.Rev. 711 (1974). But Division 9 appears to adopt the risk of loss approach in distinguishing between sale and security transfer of "accounts." *See* Cal.Comm.Code §§ 9106, 9504(c)(2). *Cf. In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279 (Bkrtcy.W.D.Tex.1983) (analyzing loan-sale distinction in terms of allocation of risk). And lacking any other standard, it seems a workable standard for this case.

■ Applying that analysis to the A & W note, I can reframe the question in this way: absent bankruptcy, as between the transferor EGI and the transferee Mrs. Feldman, who would have borne the loss if the note had gone unpaid? And on this issue, I think the record is beyond dispute. The agreement specifically provides that the transfer is "with recourse." I take that to mean that if the note had proven uncollectible, then the transferee Mrs. Feldman would have had recourse against the transferor EGI. By express agreement then, EGI bore the risk of loss. On the analysis set forth above, I find that EGI made something less than an absolute transfer. I thus conclude that Mrs. Feldman can have at best no more than a security interest.

Counsel for Mrs. Feldman, as I have indicated, did not approach the issue this way at all. Instead, he would have me look at the language of the document. In a flourish of advocacy, he says "There is absolutely no language in the documents which would indicate that the assignment of the A & W note was for the purposes of security." But the facts are rather to the contrary. The upper right-hand corner of the basic agreement bears the inscription "CLTRLNOTE–EGII"—presumably an abbreviation for "collateral note—Executive Growth Investments, Inc." The agreement describes Mrs. Feldman as a "LENDER" and also as "investor." It provides that she shall get interest on her $10,000 in the amount of 12 percent per annum, payable monthly, and that she shall get back her "principal" (of $10,000) at the end of one year. It also provides that EGI "has the right to substitute another property *as* collateral within this contract." Supporting the idea that this was an outright transfer,

counsel relies on the disclosure statement which refers to the note as being "purchased." Apparently, he assumes that the word "purchase" denotes an outright sale. Section 1201(32) defines "purchase" as including "taking by sale, discount, negotiation, *mortgage, pledge, lien,*" etc. Cal. Comm.Code § 1201(32) (West 1983) (emphasis added), indicating that a security transaction may be a "purchase" just as much as an outright sale.

## IV

Failing all else, Mrs. Feldman asserts that the property is exempted from the estate by Section 541(d) of the Bankruptcy Code, which I quote at length:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d) (1982).

This is a puzzling provision for several reasons. Most important, it does no more than restate (though in greater detail) what is already the law under 11 U.S.C. § 541(a)(1). Second, it is much broader on its face than the drafters apparently intended. The Senate Report indicates that it is directed at "bona fide secondary mortgage market transactions." *See* S.Rep. No. 989, 95th Cong., 2d Sess. 83–84 (1978), U.S.Code Cong. & Admin.News 1978, p. 5869. But it can easily be read to include much more. For example, under traditional mortgage law, in some states a mortgage lender retains "only legal title" to the mortgaged property, while his borrower holds the "equitable interest." But *compare Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir.1983) (re-

jecting possible broad reading of Section 541(d)).

Most important, the provision seems completely to ignore the impact of the strong-arm clause, 11 U.S.C. § 544(a) (1982). The central point of Section 544(a) is that it allows the trustee to reach interests in addition to the interests that become property of the estate under Section 541. Thus, in the instance of the secondary-mortgage transaction, the "equitable interest" probably would not pass to the estate under Section 541, with or without subsection (d). But other things being equal, the same equitable interest might very well pass to the trustee under Section 544(a). The issue would turn on the rights of creditors or bona fide purchasers at state law. If a creditor or bona fide purchaser at state law would not cut off the concealed equitable interest, then there is no need for Section 541(d). If the creditor at state law would defeat the concealed equitable interest, then Section 544(a) would seem to undo whatever it was that Section 541(d) was trying to do.

Ordinarily, this would be good Code analysis. But in this case, the legislative history tells a somewhat different story. *See* 124 Cong.Rec.H. 11,114 (Sept. 28, 1978); S.17,430–1 (Oct. 6, 1978). It shows that the drafters were trying, however, inartfully, to excuse transferees in the secondary mortgage market from the obligation to conform to state recording laws. In other words, the drafters, by restating what was already the law under Section 541(a), sought to carve out an exception to Section 544.

■ Under the circumstances, it is not surprising to find the Court giving a restrictive reading to Section 541(d) in *In re S.O.A.W. Enterprises, Inc.,* 32 B.R. 279 (Bkrtcy.W.D.Tex.1983). The Court there held that Section 541(d) did not apply because the transaction at issue was a "loan" rather than a "sale," although Section 541(d) nowhere expressly limits itself to "sale" transactions. *Cf. In re Columbia Pacific Mortgage, Inc.,* 22 B.R. 753 (Bkrtcy.W.D.Wash.1982). Corresponding-

ly, I think it is reasonable to give it a restrictive reading in this case. The trustee argues, and I agree, that Section 541(d) should not be applied to a "second-tier" transaction such as this, where the collateral at issue is only the A & W note. I do not have to face the question whether the first-tier Chung security would have triggered Section 541(d), because that issue is not before me in this case.

## V

For all the intricacy of the record, the sum in dispute may be as little as $1,999.24. I calculate as follows: When EGI transferred the A & W note to the defendants, it owned a beneficial interest in only 34.83 percent of the Chung security (although EGI's trustee acquired substantially all the balance later). The trustee sold the Chung security as a whole for $70,000. If the defendants were to get only 34.83 percent of $70,000, then they would divide $24,381. Mrs. Feldman took only 8.2 percent of the transferee's interest, which would be $1,999.24. On brief, Mrs. Feldman argued that she is due 8.2 percent of the whole $70,000, or $5,740. At oral argument, counsel for Mrs. Feldman also advanced the proposition that since no other transferee opposed the trustee, she should recover the entire $70,000. The issue is moot in any event, because I hold that Mrs. Feldman takes nothing.

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the trustee should submit an order.