OPINION OF THE COURT
Meyer, J.
A mortgage which contains a dragnet clause, securing not only the bond referred to in the mortgage but in addition any and all further loans from the mortgagee to the mortgagor, subject only to the limitation that the maximum amount secured at any time shall be the original principal amount, secures not only the original $2,500 obligation but also a later $6,800 note of the mortgagors to the mortgagee. Each obligation is secured to the extent of $2,500, though should foreclosure be required it cannot be had for more than $2,500. Moreover, such a provision is binding upon the mortgagors’ grantee who takes title after the later loan, except to the extent that the grantee can establish an estoppel against the mortgagee. Because defendant Mary Fioravanti, grantee from the mortgagors, has failed to meet her burden of presenting evidentiary proof of the estoppel upon which she seeks to defend, the order of the Appellate Division affirming the award of summary judgment to the plaintiff bank in this mortgage foreclosure action should be affirmed.
The complaint alleges that on May 9, 1966 defendants William V. Fioravanti III and Thomas J. Fioravanti executed to the bank their bond in the principal sum of $2,500 secured by a mortgage on real property in the Town of Caroga, which was duly recorded and on which a mortgage tax *642 of $12.50 was paid. Included in the mortgage was the printed provision that “In addition to the bond or obligation above mentioned, this mortgage is intended to secure any and all further loans or indebtedness owed or to be owed by the mortgagor to the mortgagee, and it is stipulated that the maximum amount secured by this mortgage at execution or which under any contingency may be secured thereby at any time in the future shall be the original principal amount hereof. The obligation of the mortgagee to make further or future advances or readvances shall be optional with the mortgagee. Readvances may be made under the provisions hereof to the present or to any future owner of the mortgaged premises.” On June 11, 1973 the same two defendants as comakers with Jobist Realty Inc. executed a promissory note to the bank in the amount of $6,874.56, the note reciting that it was secured by a “Parcel or Tract of Land designated as No. 77 Mechanic Street, Amsterdam, Montgomery, New York.”
By deed dated January 4, 1974 defendants William and Thomas Fioravanti conveyed to defendant Mary Fioravanti the Caroga real property. The deed is not part of the record before us but Mary Fioravanti’s affidavit states that she “assumed the payment” of the mortgage and her brief contains a similar statement. At the time the foreclosure action was begun the 1966 bond had been paid in full but there remained due on the 1973 note the sum of $3,026.54, that amount apparently being the deficiency after foreclosure of the Amsterdam property. The complaint in the present action alleges that of the balance due on the 1973 note $2,500 is secured by the 1966 mortgage and that mortgage tax of $12.50 has been paid in addition to that paid in 1966.[1] Foreclosure of the mortgage by reason of default in paying $2,500 due on the 1973 note is requested.
Of the several defenses and arguments offered by Mary Fioravanti the only ones that require discussion are payment, estoppel and the absence from the 1973 note of any *643 description of the Caroga property. The last can be quickly disposed of. It is predicated upon the provision of subdivision (1) of section 9-203 of the Uniform Commercial Code that a security interest is not enforceable unless the debtor has signed a security agreement which contains a description of the collateral. The instant action seeks foreclosure of the 1966 mortgage on real estate. Article 9 of the Uniform Commercial Code applies so far as concerns “personal property or fixtures” (§ 9-102, subd [1]) and by explicit provision “does not apply [with exceptions not here applicable] * * * (j) * * * to the creation or transfer of an interest in or lien on real estate” (§ 9-104, subd [j]). Enactment of the code has no effect, therefore, on mortgages which cover land and land alone (Coogan & Clovis, The Uniform Commercial Code and Real Estate Law: Problems for Both the Real Estate Lawyer and the Chattel Security Lawyer, 38 Ind LJ 533, 548). Even if the Uniform Commercial Code provision were applicable to real estate it would constitute no bar. The 1966 mortgage now sought to be foreclosed, not, as defendant suggests, the 1973 note, is a “security agreement” within the definition of the code (Uniform Commercial Code, §9-105, subd [1], par [£]) and it contains a description of the Caroga property sufficient to comply with section 9-203 (subd [1], par [a]) of the Uniform Commercial Code.
Analysis of the payment and estoppel arguments urged by defendants will be aided if we first draw a distinction which has not been clearly drawn in our prior decisions. Mortgages for future advances or obligations, recognized by English law since at least 1716 (Gordon v Graham, 7 Vin Abr 52, pl 3), have likewise been long recognized in New York (e.g., Hendricks v Robinson, 2 John Ch 283, 309, affd sub nom. Hendricks v Walden, 17 Johns 438; Bank of Utica v Finch, 3 Barb Ch 293; Note: 8 St John’s L Rev 340). Generally such mortgages fix the amount up to which future loans are secured (e.g., Mowry v Sanborn, 68 NY 153) though they may be equally valid when no amount is fixed or limit set (e.g., Merchants’ Nat. Bank of Whitehall v Hall, 83 NY 338; Robinson v Williams, 22 NY 380). Of importance also, concerning priority of the mortgage as *644 against subsequent encumbrancers is whether the making of future advances is obligatory or optional, the mortgagee being given priority as to all advances up to the stated sum under an obligatory provision but only as to those advances made prior to receipt by him of notice of the subsequent lien when the making of advances is at his option. Most of the decided cases in this State have been concerned with the priority issue.
Though distinguishable from the future advance provisions above referred to in that the parties usually have neither a plan of future advances nor a fixed sum in mind when the mortgage is executed (see Note-: 47 Iowa L Rev 432, 435), a provision of the type in question in the present case is conceptually also a mortgage for future advances because it will cause the mortgage to secure not only the note or bond to which it refers but also other notes executed or indebtednesses incurred by the mortgagor or mortgagors. Such provisions, inserted by the lender to give itself first call upon the security for future loans are couched in different language than the future advance provisions above referred to and are often referred to as “dragnet” clauses (Osborne, Nelson, Whitman, Real Estate Finance Law, § 12.8; Blackburn, Mortgages to Secure Future Advances, 21 Mo L Rev 209; Debts included in provision of mortgage purporting to cover unspecified future or existing debts [“dragnet” clause], Ann., 172 ALR 1079; Notes: 56 Tex L Rev 733; 5 Memphis State U L Rev 586; 47 Iowa L Rev 432; 38 NY Jur, Mortgages, § 58, p 107; 59 CJS, Mortgages, § 178, p 222). Though looked upon with disfavor in some States and never referred to in our decisions by the term “dragnet” or previously distinguished by us from future advance provisions of the type first discussed above, we have in Farr v Nichols (132 NY 327) enforced such a provision against a later mortgagee of the same premises (see, also, Brown v Kiefer, 71 NY 610). In Farr we held it inferable from the $15,000 principal sum of an earlier mortgage given to secure payment of “any and all notes, checks and drafts indorsed” by the mortgagee and the fact that but one $3,000 indorsement had been made at the time the earlier mortgage was executed that a “series of indorse *645 ments to the amount of $15,000, or nearly, was within the contemplation of the parties (132 NY, at p 330) and that “plaintiff may construe the promise as beneficially to himself as its terms will fairly admit” (id., at p 331).
Considered against that background, the provision of the 1966 mortgage quoted above is a dragnet clause which secures each advance by the bank to the extent of $2,500 (the original principal sum) but not more than a total of $2,500 at any one time. This is so because the words “In addition to the bond or obligation above mentioned,” “any and all further loans or indebtedness,” “further or future advances or readvances,” and “to the present or to any future owner of the mortgaged premises” make abundantly evident the intent of the parties that while the real property was not to constitute security for more than $2,500 at any one time, more than the one loan or indebtedness of $2,500 was intended to be secured by the mortgage. Moreover, the stipulation that “the maximum amount secured * * * thereby at any time in the future” (emphasis added) is the “original principal amount” of $2,500, when read together with the reference to “future advances or readvances,” establishes that, subject only to the maximum amount for which foreclosure may be had, each further loan or indebtedness is secured by the mortgage, the mortgage being “a continuing security” for the “floating debt intended to be secured thereby” (Bank of Utica v Finch, 3 Barb Ch 293, 298, 303, supra; see Jones, Mortgages [2d ed], p 279; 38 NY Jur, Mortgages, § 54, pp 101-102). Here, as in the Bank of Utica case, the 1973 “further * * * indebtedness” was incurred before Mary Fioravanti took title so we deal with “no right or pretended right of any grantee or incumbrancer attaching at all until after the advances were made” (id., at p 298). That the 1973 note was for a sum in excess of $2,500 is of no moment, for the mortgage made clear that the real estate constituted security for each further indebtedness but not in excess of $2,500 thereof.
Viewed in this context, payment of the 1966 note could not terminate the bank’s right to foreclose the mortgage. If payment of the original $2,500 bond terminated all right to the security without regard to further loans by or indebt *646 edness to the bank incurred by the mortgagors, the provision that the mortgage secured further loans would be wholly meaningless. The reference not only to “readvances” but also to such readvances “to any future owner” and the flat statement that the mortgage secured “any and all further loans or indebtedness owed or to be owed” (emphasis supplied) is wholly inconsistent with the concept that the life of the mortgage was limited by the status of the principal of the 1966 note. The inconsistency between that conclusion and the holding in Truscott v King (6 NY 147, 162) that “[w]hen the creditor has received of the debtor moneys, upon the security taken, equal in amount to the sum specified therein, to be secured, whether given for a present debt or for future advances, it becomes satisfied and extinguished” is more apparent than real. Truscott’s holding does not apply to a mortgage containing a dragnet clause worded as the one here in issue.[2] Truscott involved a judgment confessed for advances which the creditor had made or should thereafter make to the exent of $20,000 and, therefore, clearly evidenced that no more than $20,000 in total was secured by it. The present dragnet provision, to the contrary, shows by its wording that more than one $2,500 obligation is intended to be covered by its security, though not more than $2,500 can be recovered by foreclosure because the principal amount secured ($2,500) is the maximum “secured thereby at any time.” It follows that each payment on the 1966 obligation made the mortgage available as security for the 1973 obligation in like amount up to a total of $2,500. Mary Fioravanti, as a grantee taking after the advances were made, takes title subject to the mortgage and its dragnet provision without regard to notice (Judson v Dada, 79 NY 373, 380). A fortiori is that *647 so when, the mortgage being recorded, she is on notice of its provisions (Ackerman v Hunsicker, 85 NY 43; Real Property Law, § 291) and when she has, in fact, assumed it (cf. 21 NY Jur, Estoppel, § 53, p 80).
With respect to estoppel, the mortgage provides only that the mortgagor will on request give a written statement of the amount due and whether any offsets or defenses exist. A mortgagee may, of course, be estopped by a certificate furnished pursuant to section 274-a of the Real Property Law, but no such certificate is claimed to have been given by the bank. A mortgagee may also be estopped by his conduct from foreclosing, but to defend against a summary judgment motion in a foreclosure action it is incumbent upon the real property owner who relies upon an estoppel defense to produce “evidentiary proof in admissible form * * * sufficient to require a trial [of that defense] * * * mere conclusions, expressions of hope, unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562). Here we are informed by Mary Fioravanti’s attorney’s affidavit that the claimed estoppel arises from the bank’s “statment submitted to the purchaser, setting forth a balance due upon the mortgage upon which" the purchaser relied” but the only support for that claim is the statement, made in the same affidavit by the attorney “speaking for Mary Fioravanti”, that “the sellers delivered to the buyer a statement showing the balance then due upon the mortgage.” Whether the statement referred to was made by the sellers or was one received by them from the bank and, if from the bank, whether simply a periodic billing statement or the more formal statement provided for by section 274-a of the Real Property Law, we are not told. We cannot assume that it was the latter and if it was the former the bank would not be estopped by it, as Mary Fioravanti argues. Unlike the public weigher’s certificate involved in Glanzer v Shepard (233 NY 236, 238-239), a bank’s periodic billing statement is not submitted with “the end and aim” that it be presented by the mortgagor receiving it to a potential purchaser; it is, rather, simply a statement of the status of the original bond or note secured by the mortgage.
*648 The bank’s original motion for summary judgment was denied for insufficiency of its papers, and on renewal an affidavit of Mary Fioravanti was submitted. That affidavit, however, for the most part refers to events after she took title to the property which could not create an estoppel (Assets Realization Co. v Clark, 205 NY 105, 109). Moreover, despite an affidavit of a bank official denying that Mary Fioravanti ever requested a statement of balance due, her only rejoinder was “that at the time that I purchased this property on the 4th day of January, 1974, I was advised by the bank that the balance due on the mortgage was $752.29.” While the function of the court on a motion for summary judgment is to ascertain whether the papers demonstrate the existence of a triable issue of fact and not to determine the issue presented, something more than that conclusory allegation is required to demonstrate that in taking title to the property Mary Fioravanti received and relied upon an assurance of the bank under circumstances that would constitute an estoppel, especially since, having assumed the mortgage, she was chargeable with knowledge of its dragnet clause.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.

. Whether the total tax paid is correct is not an issue in this proceeding. Section 256 of the Tax law provides that if the indebtedness which by any contingency may be secured by the mortgage is not determinable from its terms, the tax shall be computed on the value of the property covered by the mortgage.

. Nothing in our decision in First Nat. City Bank v Tara Fealty Corp. (48 NY2d 793), reversing for the reasons stated in the Appellate Division dissent (64 AD2d 460, 462-465), is contrary to the conclusion now reached. The future advance provision in Tara was in an unrecorded instrument of which the subsequent encumbrancer had no knowledge, and the Appellate Division dissent concluded that “The recording statutes protect only those interests that are recorded and only to the extent indicated in the recorded instrument,” and held, therefore, that the $100,000 referred to in the recorded instrument having been repaid the mortgage was as to a subsequent encumbrancer extinguished.