COMMERCIAL TRADING COMPANY, INC., Appellant, v JACOB FREIDUS et al., Respondents.

First Department, February 25, 1986

## APPEARANCES OF COUNSEL

*David O. Wright* of counsel *(Edward A. Friedman* with him on the brief; *Stein, Zauderer, Ellenhorn, Friedman & Kaplan,* attorneys), for appellant.

*Kenneth G. Schwarz* of counsel *(Fischbein Olivieri Rozenholc & Badillo,* attorneys), for Jacob Freidus, respondent.

*Stuart A. Summit* of counsel *(William A. Alper* with him on the brief; *Burns Summit Rovins & Feldesman,* attorneys), for Ella Freidus, respondent.

## OPINION OF THE COURT

MILONAS, J.

The evidence at trial was undisputed that plaintiff Commercial Trading Company, Inc., extended a series of loans to defendants' corporation, 601 West 26th Corporation (601 Corp.), including loan No. 9 in the sum of $200,000 which was evidenced by some 200 promissory notes. Defendants Jacob and Ella Freidus, officers of 601 Corp., executed personal guarantees for loan No. 9. In addition, Jacob Freidus executed a continuing unlimited guarantee which covered all loans by plaintiff to 601 Corp., and Jacob and Ella Freidus signed a cross collateral agreement providing that plaintiff could apply certain collateral given by defendants at the time of loan No. 9 to any loans made by plaintiff to 601 Corp. Although notes Nos. 1 through 95 were ultimately paid, the balance due on notes 96 through 200 remained outstanding, and plaintiff commenced the instant action to recover the $105,000 still owed. In response, defendants alleged payment, contending that the proceeds received by plaintiff from the sale of two items of collateral should have been allocated to loan No. 9 rather than applied by plaintiff to extinguish other loans (Nos. 7, 8 and 10) which were also in default.

It should be noted that the proceeds from the collateral

security, the first for $93,352.80 obtained on September 13, 1972, the second for $11,900 received on May 3, 1973, were placed by plaintiff in a noninterest bearing suspense account. Neither the debtor nor the guarantors ever requested that the funds in this account be allocated to any particular unpaid debts. The trial court, however, after considering the proof introduced in connection with this matter, determined that plaintiff creditor was not authorized to use the suspense account moneys in the manner in which it did and sustained defendants' claim of payment. In its opinion, the court recognized the general rule that where there are several debts, the debtor may in the first instance direct to which one the payment should be applied but that in the absence of such designation, the right of allocation passes to the creditor. Yet, the court concluded that invocation of this principle was inappropriate here in that plaintiff's sale of the collateral security constituted involuntary payments. According to the court, involuntary payments require allocation of the proceeds to the debt to which the security pertains, and the entire amount deposited in the suspense account represented the proceeds from collateral pledged as security for loan No. 9. Therefore, except for the existence of the cross collateral agreement, plaintiff creditor would be compelled to apply those funds to loan No. 9.

The court then found that the cross collateral agreement was "overcome" by the fact that none of the loans were in default when plaintiff acquired the $94,352.80 on September 13, 1972, but that loan No. 9 went into default approximately one month later, prior to the default on the other three loans. Thus, at the time of the loan No. 9 default, plaintiff was obligated to apply the $93,352.80 to that loan. However, by the time that the $11,900 was obtained on May 3, 1973, other loans were also in default, so these proceeds were not automatically subject to the same restrictions. The court, nonetheless, held that there was no balance due under loan No. 9 since plaintiff had improperly distributed $47,000 of suspense account funds to loan No. 10. In the view of the court, the language of the cross collateral agreement, which refers to loans made "heretofore or simultaneously herewith" contemplates that the security pledged could be allotted only for existing or preexisting loans, not loans extended after the May 25, 1972 date of the agreement.

Finally, the court noted that plaintiff had foreclosed on a mortgage given as security for loan No. 7. Citing RPAPL 1371,

the court made mention of the principle of law that an underlying debt is deemed paid upon the mortgage foreclosure unless the creditor has moved for a deficiency judgment, which plaintiff herein failed to do. Although the court acknowledged that section 1371 is not applicable to a new loan separate and distinct from the mortgage debt, it found that loan No. 7 was the very debt for which the mortgage in question was executed. Therefore, plaintiff had not been warranted in claiming an outstanding balance of $60,365.86 on loan No. 7.

When the present matter was previously before this court in connection with defendant's assertion of a Statute of Limitations defense, we determined that loan No. 9 was current through note No. 95 and into March of 1974 as the result of a $75,000 payment in November of 1972 (80 AD2d 503). That is the law of the case, and the trial court could not now alter that conclusion by holding that loan No. 9 went into default on October 19, 1972. Consequently, by the time that loan No. 9 went into default, the three other loans were already in default. Moreover, the trial court's reliance on the involuntary payments doctrine was erroneous. Payment in the form of proceeds from a collateral mortgage is clearly a voluntary payment which a creditor may apply in the manner most advantageous to it. *(Smith v Rothman,* 6 AD2d 859, *affd* 6 NY2d 793.)

The trial court also incorrectly construed the cross collateral agreement. An examination of that document reveals that the words "heretofore or simultaneously herewith" relate to "every item of collateral security", not to the loans which they were intended to secure. Indeed, according to the agreement, defendants asserted that "every item of collateral security * * * given by any of us to you as security for any loan made by you to any of us or guaranteed by any of us to you, whether heretofore or simultaneously herewith, shall be and stand as collateral security for each and every other such loan and guarantee, and that you may resort to any item of such collateral or security on account of the breach by any of us of any such loan or guarantee." Certainly, the language of the agreement does not contain the limitation perceived by the trial court, and upon default of any loan, even a later extended one, plaintiff was entitled to call upon the collateral security. In that regard, it is significant that plaintiff's witness testified without contradiction at trial that the cross collateral agreement was drafted by the attorney for defendant Jacob

Freidus in order to induce further extensions of credit and that plaintiff did not demand additional collateral in making loan No. 10 because it was relying upon the existing collateral and cross collateral agreement.

As for the trial court's determination that loan No. 7 and the mortgage pledged as security therefor constituted the same debt, there is simply no basis for such a conclusion. In fact, the underlying real property was not even owned by defendants; rather, Ella Freidus was the mortgagee, and she merely assigned her interest in that mortgage as another piece of collateral for the loans being made by plaintiff. The court itself pointed out that RPAPL 1371 is not applicable where the action is on a debt separate and apart from the mortgage debt. *(GIT Indus. v Rose,* 81 AD2d 656, *affd* 62 NY2d 659; *Federal Deposit Ins. Corp. v Forte,* 94 AD2d 59.) However, while this defense is without merit, defendants do raise a valid argument under Uniform Commercial Code article 9 and the standard of commercial reasonableness set forth therein. Defendants allege that plaintiff creditor failed to act accordingly, and, therefore, loan No. 7 was extinguished. While it is true that defendants did not assert the UCC defense until after the taking of evidence had been concluded, CPLR 3025 (c) permits amendment of the pleadings to conform to the proof even following the entry of judgment. *(See, Murray v City of New York,* 43 NY2d 400.) It appears that there may be some substance to defendants' claim that plaintiff did not reasonably convert the foreclosed mortgage into proceeds, and, thus, a remand for further proceedings in connection with this partial defense is warranted. Plaintiff is, however, entitled to an interlocutory judgment based upon the difference between the loan No. 9 balance ($105,000) and the loan No. 7 balance ($60,385.85) or $44,614.15.

Appeal from order of the Supreme Court, New York County (Nicholas A. Clemente, J.), entered on April 18, 1985, which, following a nonjury trial, dismissed the complaint, should be dismissed as superseded by the appeal from the judgment of May 8, 1985.

Judgment of the Supreme Court, New York County (Nicholas A. Clemente, J.), entered on May 8, 1985, which dismissed the complaint, should be reversed, on the law and the facts, the complaint reinstated, judgment directed in favor of plaintiff in the amount of $44,614.15, plus interest and attorneys' fees, and the matter remanded for further proceedings in accordance herewith, with costs and disbursements.

SULLIVAN, ROSS and FEIN, JJ., concur with MILONAS, J.; KUPFERMAN, J. P., dissents in part and would affirm for the reasons stated by Nicholas Clemente, J., at Trial Term.

Judgment, Supreme Court, New York County, entered on May 8, 1985, reversed, on the law and the facts, the judgment vacated, the complaint reinstated, judgment directed in favor of plaintiff in the amount of $44,614.15, plus interest and attorneys' fees, and the matter remanded for further proceedings in accordance with the opinion filed herein. Appellant shall recover of respondents one bill of $75 costs and disbursements of this appeal, and the appeal from the order entered on April 18, 1985 is unanimously dismissed as having been superseded by the appeal from the aforesaid judgment.