### In re CORONET CAPITAL COMPANY, Debtor.

#### Bankruptcy No. 90 B 13646.

United States Bankruptcy Court, S.D. New York.

June 11, 1992.

J.S. Reich, M.S. Indelicato, Hahn & Hessen, New York City, for Trustee ("Trustee").

L. Biancone, New York City, for JIB Associates ("JIB").

S. Komrower, Cole, Scholtz, Bernstein, Meisel & Forman, P.A., Hackensack, N.J., for JIB.

## MEMORANDUM OF DECISION ON RELIEF FROM STAY

FRANCIS G. CONRAD, Bankruptcy Judge.[*]

JIB's Motion for Relief from Stay requires [1] us to determine whether an alleged participation agreement is a true participation transaction or a disguised loan. We hold the alleged loan participation agreement is in fact a disguised loan, and relief from stay will be denied.

### PROCEDURAL BACKGROUND

Coronet Capital Company ("Coronet" or "Debtor") is a New York limited partnership that was engaged in the business of mortgage financing and real estate investing. An involuntary Chapter 11 petition was filed against it on November 6, 1990. On July 9, 1991, we converted the Chapter 11 case to one under Chapter 7. On September 20, 1991, a Trustee was appointed. JIB, senior participant in a loan agreement with Coronet, now moves for an order, under § 362, authorizing removal of the automatic stay. Trustee objects on the grounds that the loan participation is a disguised loan.

### FACTS

On August 9, 1989, JIB entered into an Assignment, Participation, and Servicing Agreement (the "Assignment Agreement") with Coronet, where it purportedly purchased a $500,000 senior participation inter-

---

[*] Sitting by special designation.

[1] We have subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(G). This Memorandum of Decision constitutes findings of fact and conclusions of law under Federal Rule of Civil Procedure Rule 52, as made applicable by Federal Rules of Bankruptcy Procedure Rules 7052 and 9014.

est in the consolidated mortgage (the "Mortgage") made by SSD Properties Corp. ("SSD") to Coronet, together with all collateral documents, including the personal guarantees of Robert and Karen Ettinger (the "Loan Documents"). The Mortgage secured SSD's indebtedness to Coronet under consolidated notes in the principal sum of $550,000 and covers a ten-unit, five-story brownstone known as 17 Monroe Street, Brooklyn, New York.

JIB's purchase of its interest in the Mortgage is memorialized in an Assignment of Mortgage reflecting that JIB owns an undivided 90.91% senior interest therein. The Assignment of Mortgage was recorded.

JIB paid Coronet in full for JIB's interests in the Assignment Agreement.

Under the Assignment Agreement, JIB was to receive payments of three and one-half percent above the prime rate of interest with a minimum rate of 15% per year. Coronet is obligated to make the payments within ten days of its receipt and collection of each payment by SSD. Section 2(b)(i)(A) of the Assignment Agreement, however, states: "anything in this Agreement to the contrary notwithstanding, Coronet agrees to pay interest on the Senior Interest, at the Return Rate, during such periods of time as the Borrower shall not be current with respect to the payment of interest on the Loan." Moreover, § 2(b)(i)(B) requires Coronet to repay the balance of the Senior Interest at the Return Rate to the Participant prior to Coronet's retention of any sums received at maturity.

## DISCUSSION

■ A typical loan participation transaction involves a lead lender who retains some interest in the transaction, retains possession of the note, and retains the power to enforce against the mortgagor. *Fireman's Fund Insurance Cos. v. William B. Grover (In re The Woodson Company)*, 813 F.2d 266, 270 (9th Cir.1987). The relationship between a lead lender and a participant is characterized as debtor and creditor if the participation is in fact a loan. The factors indicating an intention to create a loan instead of a participation include:

1) guarantee of repayment by the lead lender to a participant; 2) participation that lasts for a shorter or longer term than the underlying obligation; 3) different payment arrangements between borrower and lead lender and lead lender and participant; and, 4) discrepancy between the interest rate due on the underlying note and interest rate specified in the participation. *Hutchins, What exactly is a Loan Participation?*, 9 Rut.Cam.L.J. 447, 460 (1978). Section 541(a) of the Bankruptcy Code defines property of the estate to include all legal or equitable interests of the debtor in property, as of the commencement of the case. The property included in an estate under § 541(a) is limited by the provisions of § 541(d), which provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The purpose of § 541(d), as applied to the secondary mortgage market is to make certain that secondary mortgage market sales (like loan participation agreements), as they are currently structured, are not subject to challenge by bankruptcy trustees. Those purchasers of mortgages are able to obtain the mortgages or interests in mortgages that they have purchased from a debtor without a trustee asserting that the sale of the mortgage is a loan from the purchaser to the debtor. *In re Columbia Pacific Mortgage, Inc.*, 20 B.R. 259, 262 (Bkrtcy. W.D.Wash.1981).

■ Here, however, Trustee rightfully contends the Assignment Agreement was a disguised loan. First, the agreement specifically provides in § 2(b)(1)(A) that "Coronet agrees to pay interest on the Senior Interest, at the Return Rate, during such

period(s) of time as the Borrower shall not be current with respect to the payment of interest on the loan." Second, § 2(b)(1)(B) requires Coronet to repay the balances of the Senior Interest at the Return Rate to the Participant prior to Coronet's retention of any sums received at maturity. The terms of this transaction evidence that JIB "participated" in a no-fault transaction whereby it was guaranteed to be paid its interest and principal, prior to Coronet, the lead lender, receiving its share.

Trustee further argues that the conduct and course of dealings between Coronet and JIB, especially the continuing payments to JIB on behalf of the JIB interest while the Mortgage was in default, demonstrates that Coronet and JIB believed and acted as if the JIB interest was a loan to Coronet. The record indicates that JIB received interest payments from Coronet between July, 1989 through October, 1990. SSD, however, stopped making payments on the Mortgage in August, 1990.[2] Obviously, Coronet paid JIB even though SSD had defaulted on the loan. This latter course of conduct clearly evinces a loan and not a participation.

Participation Agreements where the lead lender guarantees a return to the participant have been found to be disguised loans. In *Woodson*, supra, 813 F.2d 266, the Court held that the interests held by the permanent investors were disguised loans and not participation agreements as argued by Fireman's Fund, the insurance carrier that insured Woodson's contractual obligations to its investors. The investor received a guaranteed rate of interest regardless of whether borrowers made their monthly payments. The Court found Woodson did not merely guarantee a certain return, but effectively guaranteed against all risk of loss. This is entirely different from a participation transaction in which participants share in the risk and must rely on the credit-worthiness of the borrower and the collateral. *Id.* at 271–272.

Moreover, in *Castle Rock Industrial Bank v. S.O.A.W. Enterprises Inc. (In re S.O.A.W. Enterprises Inc.)*, 32 B.R. 279 (Bkrtcy.W.D.Tex.1983), the Court held that a participation agreement where the participant was guaranteed by the lead lender its interest and principal payments was in fact a loan. There, Castle Rock, a Colorado Industrial Bank, purchased a "participation interest" in a portfolio of loans made by S.O.A.W. The Court rejected these participation agreements, instead ruling they were loans because: first, Castle Rock received a greater rate of repayment and return than S.O.A.W. received under their loan agreements with the borrower; and second, Castle Rock participated in a no-risk loan because their investment and interest was personally guaranteed by S.O.A.W. *Id.* at 282–283. Accordingly, in the two above-mentioned cases, the transactions were declared to be property of the estate of the debtor-in-possession because they were in fact loans, not true participations.

Trustee maintains, that § 2(b)(1)(B) of the Assignment Agreement, which requires Coronet to repay the balances of the Senior Interest to JIB prior to the retention by Coronet of any sums received at maturity, is a loan term. Such a scenario suggests Coronet assumed a responsibility for payment to JIB. Normally, a "participant" assumes the same risks as the person selling the participation. *Woodson*, supra, 813 F.2d at 271, quoting, *In re S.O.A.W. Enterprises, Inc.*, supra, 32 B.R. at 282.

In *In re Golden Plan of California, Inc.*, 829 F.2d 705 (9th Cir.1986), the Court held a participation agreement where the payments where not guaranteed was a true participation agreement. The investors in *Golden Plan* received an "Assignment of Note," which assigned over and transferred all rights, title and interest in the note to the investors without recourse. This styling of the assignment indicates it was an unconditional and absolute transfer of the note. *Id.*, at 709. Moreover, the investors received no contractual guarantee of

---

**2.** It is possible this date is April, 1990, but no evidence other than an allegation by Coronet supports the date one way or the other. Accord-

ingly, we make no finding at this time as to the correctness of this date.

repayment or compensation in the event of foreclosure. Such assumption of risk strongly suggests that the investors were not in a creditor-debtor relationship. *Id.*

Furthermore, in *Matter of Yale Express System, Inc.*, 245 F.Supp. 790 (S.D.N.Y. 1965), the Court held a participant could not setoff money owed to it by way of a participation agreement. The subject of dispute was a credit balance in a bank account maintained by Yale (borrower) at Marine (participant). *Id.* at 792. Marine had made advances to FNCB to "lay off" a portion of advances made under the agreement with Yale. Marine argued it could set off the money in the Yale bank accounts. The Court held, however, that the money could not be set off, but was instead property of the debtor's estate. The Court reasoned there was no creditor-debtor status between Marine and FNCB: one, Marine advanced money only to FNCB; two, the participation agreement was made by FNCB, and its right to repayment would arise only upon the receipt by FNCB of payment from Yale; three, on default by Yale, only FNCB could take the necessary actions; and four, the parties (FNCB and Marine) intended a participation agreement.

 We adopt Yale's holding. A true participation agreement is one that: a) money is advanced by participant to a lead lender; b) a participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and, d) the document is evidence of the parties' true intentions. See also, *In re Woodson*, supra at 272.

### CONCLUSION

The Assignment Agreement at issue here is a disguised loan. First, Coronet continued to make interest payments to JIB, even after SSD defaulted on the loan. Second, Coronet guaranteed payment to JIB regardless of SSD paying it [§ 2(b)(i)(A)] This effectively guaranteed JIB against all risk of loss. In other words, it was a no-risk loan. Moreover, the alleged "participation agreement" had no elements evidencing a true participation

transaction. Instead, there was a contractual guarantee of repayment. In a true participation agreement, the participant gets paid from money the lead lender receives from the borrower. Eedwidge, *Loan Participations Among Commercial Banks*, 51 Tenn.L.Rev. 519, 524. Here, Coronet was required to pay JIB, notwithstanding the payments from the borrower [§ 2(b)(i)(A)]. Finally, although the parties can call a document a "loan participation agreement", we are not obliged to make a holding that exalts substance over form. The parties true intention here is evidenced by the terms of the document. This transaction by its form and the course of conduct of Coronet and JIB is, in fact, a loan.

Accordingly, these transactions should be considered loans and, at time of the filing of the petition, property of the estate of the Debtor. JIB's motion for relief from stay will be denied.

Trustee is to settle an order on JIB.