In re SPRINT MORTGAGE BANKERS
CORP., Debtor.

George RYAN and Gloria
E. Funaro, Plaintiffs.

v.

Edward ZINKER as Trustee for
Sprint Mortgage Bankers
Corp., Defendants.

Bankruptcy No. 891–82787–478.
Adv. No. 892–8467–478.

United States Bankruptcy Court,
E.D. New York.

Feb. 17, 1994.

Zinker & Gelfand by Stephen P. Gelfand, Smithtown, NY, for trustee.

Weisberg & Wisman by David C. Weisberg, Patchogue, NY, for plaintiffs.

### DECISION AND ORDER

DOROTHY EISENBERG, Bankruptcy Judge.

### INTRODUCTION

George Ryan and Gloria E. Funaro (the "Plaintiffs") brought on the instant motion for summary judgment in this adversary proceeding. They are seeking a determination of their rights to notes and proceeds thereof, secured by deeds of trust on real property held by Sprint Mortgage Bankers Corp. (the "Debtor"), which was operating in the secondary mortgage market. The Chapter 7 Trustee has opposed the relief sought in the motion for summary judgment on the merits, and alleges that the transactions between the Debtor and Plaintiffs are to be classified as loans and not participations in specific mortgages, and as such, the notes and proceeds are property of this estate. The Chapter 7 Trustee has also cross-moved for summary judgment regarding an alleged preferential payment made by the Debtor to Gloria Funaro within one (1) year prior to the filing of the petition. The parties have stipulated to the facts which are incorporated herein. Since the relevant facts in the case are not in dispute, summary judgment is appropriate in this case. Based on Sections 541(d) and 544(a) of the Bankruptcy Code and relevant case law, the Plaintiffs' motion for summary judgment is denied, and the notes and proceeds are declared property of this Estate. The Plaintiffs have an unsecured claim for any funds advanced to the Debtor and not repaid. As to the alleged preferential transfers, this Court finds that the *Deprizio* case is inapplicable to the facts herein. Therefore, the Trustee's cross-motion for summary judgment as to this issue is also denied.

### FACTUAL BACKGROUND

The Debtor was incorporated under the laws of the State of New York as a licensed mortgage broker. It made mortgage loans to various third parties with funds obtained from private investors, including the Plaintiffs. Through its principal Hyman Gaines, the Debtor represented: 1) that the monies advanced to the Debtor would be invested in interests in mortgages recorded in the State of New York, and 2) that the investors' advances would be secured by assignments of mortgages made to these investors. Specific properties to be mortgaged were not identified by the Debtor prior to the advancement of money or prior to the assignment of any mortgage. Mr. Gaines executed personal guarantees on virtually all of the investments, agreeing to both service the mortgage and collect each mortgagor's interest payments at no cost to the investor. The guarantee further stated "[i]n the event of a default of the above mortgage, at any time, we represent that we will: (a) replace the mortgage in the amount equal to the balance of your ... interest ... or (b) refund the balance of your portion of said mortgage at the face value of your interest at the time of said default." The investment appears to be a "no risk" proposition, as both the Debtor and Hyman Gaines agreed to be liable to the Plaintiffs in the event of a default by the mortgagor with respect to their assigned mortgage. In several instances, the mortgagors did default in making payments and the

guarantees were honored for a certain time period. The facts further reveal that a guaranteed rate of return was promised, as well as a specific date of return of all funds one (1) year from the date of the investment. The one year maturity date was often in advance of the maturity date of the mortgage, and was not the same date as the last due date on the mortgage. The assignments of mortgage interest were recorded, but the mortgage notes were retained by the Debtor. In most, if not all cases, the original mortgage note was for a different amount than the debt due to Plaintiffs for their mortgage interest assigned to them.

In each case, advances were made to the Debtor prior to the Debtor satisfying a mortgage interest of another person or the making of the mortgage loan. Shortly thereafter, the Debtor provided each Plaintiff with a recorded assignment of mortgage and a guarantee agreement from the Debtor and from Hyman Gaines guaranteeing the performance of the underlying mortgage.

Upon receiving funds from the Plaintiffs and other investors, the funds were deposited into the Debtor's account at Marine Midland Bank, N.A.. This account was comprised of commingled funds from a variety of sources. It was out of this general account that second mortgage loans were provided to various third parties. No attempt was made to earmark specific funds provided by Plaintiffs for specific mortgages. The Plaintiffs essentially received their mortgage assignments in a random manner.

At the time the Plaintiffs made their respective investments, the Debtor was insolvent. Using the Debtor as a vehicle, Gaines had developed a fraudulent scheme in which funds solicited from new investors were used to repay earlier investors and also to personally benefit Gaines. The fraud encompassed not only the Plaintiffs' investments, but virtually all of the Debtor's investors. This was a variation of a fraudulent scam commonly known as a "Ponzi" scheme. The scheme was largely successful, netting in excess of $20 million from approximately four hundred (400) investors, according to Gaines' plea agreement with the United States of America, in a criminal proceeding in the District

Court for the Eastern District of New York. The Plaintiffs remained unaware of the fraud and the Debtor's insolvency until the scheme began to unravel and the Debtor discontinued interest payments to the Plaintiffs.

On June 27, 1991, the Debtor filed a voluntary petition for relief under Chapter 7. The Debtor's summary of schedules filed reveals that an overwhelming majority of the Debtor's debts are due to investors similar to the Plaintiffs, all of whose "investments" were personally guaranteed by Mr. Gaines.

The instant adversary proceeding was brought by the Plaintiffs pursuant to Sections 541 of the Bankruptcy Code seeking a judicial declaration that the Plaintiffs each own discrete portions of the mortgages and notes as a result of receiving assignments of the mortgages. According to the Plaintiffs, such assignments are perfected under applicable New York law even if the assignments are not recorded and the original notes and deeds are not in the possession of the assignees. In the alternative, the Plaintiffs argue that the Trustee may not avoid the mortgage assignments under the preference provisions contained in Section 547(b) of the Code. The Chapter 7 Trustee acknowledges that if the transactions were actually mortgage participation assignments, the assignees need not have possession of the original documents in order to have a valid assignment of the portions of the mortgages. However, the Trustee claims that the transactions in question were not participations in the Debtor's interest in the mortgages, but should be classified as loans. If the transactions are loans, then since the notes were never transferred to the Plaintiffs' possession, the assignments were never perfected under applicable New York law. Therefore, the mortgages are property of the Debtor's estate in which the Plaintiffs do not have a perfected interest. As a result, the Trustee asserts that all of the Plaintiffs should be deemed unsecured creditors who will share in the Debtor's estate on an unsecured, pro-rata basis.

In subsequent memoranda, the Plaintiffs further claim that the mortgages were given to Plaintiffs by the mortgagors through the Debtor as Plaintiffs' agent, or were given as security for the Debtor's underlying debt

more than one year prior to the bankruptcy. Therefore, the Plaintiffs argued that the assignments are not voidable by the Trustee as preferences.

The Trustee has made no argument that the mortgage assignments may be avoided pursuant to Section 547(b) of the Code. He claims that the Plaintiffs' alleged secured interests were not perfected as against the Trustee, and as such, are merely unsecured claims. However, the Trustee does seek to avoid a payment in the amount of $876.96 made to Plaintiff Funaro on July 26, 1990 as a preferential transfer under 11 U.S.C. Section 547(b). Since the payment in question was made between ninety days and one year prior to the date the petition was filed, the Trustee relies on *Deprizio* and its progeny to establish a cause of action. The Trustee asserts that since the debt owed to Funaro was guaranteed by Mr. Gaines, the statutory period applicable to insider debts is appropriate.

#### DISCUSSION

The Plaintiffs' argument that the Trustee may not avoid the assignments under Section 547(b) of the Bankruptcy Code is misplaced. The Trustee is not attempting to avoid the assignments as preferential transfers. The Trustee is asserting that the mortgages and notes never left the Debtor's estate, and are property of the Debtor's estate. The issues before the Court are whether: (i) the mortgages and notes were properly assigned to the Plaintiffs as participants in the secondary mortgage market, which would place these interests outside of this estate; (ii) the transactions entered into by the Plaintiffs should be deemed loans, relegating the Plaintiffs to the status of creditors of this Debtor; (iii) the Debtor held only bare legal title to the mortgages and notes in question, merely as servicing agent for the Plaintiffs; and (iv) the recorded assignments of mortgage were sufficient to perfect the Plaintiffs' interest in the underlying mortgage without receiving the underlying notes.

The Plaintiffs urge this Court to begin its analysis with applicable New York law, specifically Section 5–1107 of the General Obligations Law of New York State concerning the validity of assignments.[1] The Plaintiffs also cite several cases which apply New York law to the issue of the validity of assignments of mortgages. Under New York law, perfection of a security interest in a note is covered exclusively by Article 9 of the Uniform Commercial Code. Article 9 requires possession of the note in order to perfect the collateral assignment of the mortgage. *Landmark Land Co., Inc. v. Sprague,* 529 F.Supp. 971 (S.D.N.Y.1981), *rev'd on other grounds,* 701 F.2d 1065 (2d Cir.1983). *See also, In re Stockbridge Funding Corp.,* 145 B.R. 797, 808 (Bankr.S.D.N.Y.1992), *aff'd in part and vacated in part,* 158 B.R. 914 (S.D.N.Y.1993). In this case, the notes were never transferred to the Plaintiffs' possession and therefore, the assignments were not properly perfected. The Plaintiffs claim that despite the fact that the notes were never turned over to them, their interests are perfected because participants in the secondary mortgage market do not have to take possession of the mortgage or the notes in order to perfect their security interests therein.

The Court recognizes that under New York law assignments of mortgages may be valid even where the assignee does not retain possession of the original note and deed. However, the Plaintiffs' arguments completely ignore the provisions of the Bankruptcy Code which govern the issues. Once a petition is filed, the Bankruptcy Code confers certain rights to the Trustee or debtor-in-possession which do not exist under relevant state law. In order to make a determination on the issues at bar, an analysis of Section 541 of the Bankruptcy Code is the appropriate starting point.

Section 541 of the Code provides in relevant part as follows:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised

---

1. Section 5–1107 of the General Obligations Law of the State of New York states as follows:
   An assignment shall not be denied of the effect of irrevocably transferring the assignor's rights because of the absence of consideration if such assignment is in writing and signed by the assignor or his agent.

of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case ...

Section 541(a) is broad and all encompassing, and includes loan proceeds held by the Debtor. Although a lender will be deemed to have an interest in the funds, the loan proceeds properly come within the scope of Section 541(a) of the Code.

■ However, Section 541(a) is limited in scope by, *inter alia*, § 541(d) of the Bankruptcy Code. This section provides, in relevant part, as follows:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the Debtor does not hold.

The purpose behind enacting § 541(d) was to protect the secondary mortgage market where the seller (in this case, the Debtor) retains legal title of the documents only in order to service the notes. *See In re Lemons & Associates,* 67 B.R. 198, 209 (Bankr. D.Nev.1986). Section 541(d) is a codification of the law in many states, including New York, which exempts secondary mortgage market participants from compliance with State recording laws regarding perfection of the interests of assignment purchasers. Pursuant to § 541(d), the Court has the authority to recognize the division of legal and equitable interests in and to the mortgages provided that the transaction is a true mortgage participation. The Trustee will hold the property (*i.e.* the note and deed) subject to the outstanding and superior equitable interests of the beneficiaries. *Id., citing American Service Co. v. Henderson,* 120 F.2d 525, 530 (4th Cir.1941). As a result, the notes and their proceeds will be held in trust for the purchasers. However, this provision only applies to parties who are found to be actual participants in the secondary mortgage market. If the transactions are more properly deemed as loans rather than purchases, the Plaintiffs would not have perfected assignments of the mortgages, since the interests in the original notes were not perfected by possession pursuant to applicable New York State law. Therefore, the Plaintiffs would be unsecured creditors of the Debtor's estate, and would share in a distribution of the Debtor's estate on a pro-rata basis, along with other similarly situated investors. *Id.*

■ When determining whether a given transaction constitutes a loan or a sale of an interest in a note, courts look to several factors. A participation in a mortgage possesses the following characteristics:

a) money is advanced by the participant to a lead lender; b) the participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and d) the document is evidence of the parties' true intentions. *In re Coronet Capital,* 142 B.R. 78 (Bankr.S.D.N.Y.1992).

■ In comparison, there are four factors courts analyze which indicate a loan, and not a participation is involved:

1) guarantee of repayment by the lead lender to a participant;
2) participation that lasts for a shorter or longer term than the underlying obligation;
3) different payment arrangements between borrower and lead lender and lead lender and participant; and,
4) discrepancy between the interest rate due on the underlying note and interest rate specified in the participation.

*In re Coronet Capital,* 142 B.R. at 80.

Of the four factors listed above, the first—guarantee of repayment by the lead lender to the participant—is crucial in determining classification of a given transaction. The existence of a guarantee "seems to result in a

finding of a debtor-creditor relationship in most cases." *In re Woodson Co.*, 813 F.2d 266, 271 (9th Cir.1987). *See also In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279 (Bankr.W.D.Tex.1983). In contrast, under traditional loan participation agreements, a "participant" normally assumes the same risk as the person selling the participation. *Id.* at 282. In participation transactions, no guarantees are given, and "participants share in risk and must rely on the creditworthiness of the borrower and the collateral." *In re Woodson Co.*, 813 F.2d at 272.

■ The second leading factor in determining whether a transaction is a loan or a purchase of an interest in a mortgage is whether the interest rate due on the note and that specified in the agreement. Where the investor's return is higher than that of the debtor, the agreement is usually deemed a loan and not a loan participation transaction. *Id.* at 272. Applying the criteria listed in *Coronet* to the facts of this case it is clear to this Court that despite the Plaintiffs' beliefs, the transactions at issue are disguised loans rather than true loan participation agreements. For each of the transactions at issue, the Debtor and Hyman Gaines personally guaranteed the Plaintiffs' interests in the mortgages. The guarantor agreed, in the event of default to "(a) replace the mortgage in the amount equal to the balance of your … interest … or (b) refund the balance of your portion of said mortgage at thé face value of your interest at the time of said default." This arrangement is in sharp contrast to the typical loan participation agreement in which the investor "normally assumes the same risk as that of the person selling the participation or generating the loan." *In re S.O.A.W. Enterprises, Inc.*, 32 B.R. at 282.

Further indication that the transactions were loans is suggested by both the term of the investments and the interest rates paid on those investments. Each assignment of mortgage to the Plaintiffs stated that their "interest shall definitely mature" one year from the date of the guarantee. However, each mortgage involved in this case matured on a date other than the date on which the Plaintiffs were entitled to repayment. Fur-

thermore, the rate of interest which the Debtor paid the Plaintiffs averaged three percent below the rate of the original mortgages. As a result, the Plaintiffs cannot rely on the protection of Section 541(d) with regard to the mortgage assignments, nor can they rely on the New York State law corollary to section 541(d) of the Code.

■ Even were the Plaintiffs able to successfully prove that they had purchased interests in specific mortgages, their claim to the mortgages would still fail because the Debtor did not segregate the accounts. *See In re Lemons & Associates, Inc.*, 67 B.R. at 213–214. As in *Lemons*, even if a trust were established, the Plaintiffs' claims to the mortgages at issue would be denied because it would be impossible for any investor to track his or her portion of the proceeds to any identifiable funds. To grant these Plaintiffs the right to the specific funds requested would exact an inequitable result on the other hundreds of investors which are similarly situated.

As to the issue of whether the assignments of the mortgages in question acted as security for the loan made to the Debtor by Plaintiffs, the Court need not reach this decision since any security interest in the mortgages would have had to have been properly perfected to be valid against the *Trustee*. Pursuant to Section 544(a) of the Bankruptcy Code, the Trustee is granted the status of a hypothetical lien creditor, who as of the commencement of the case had completed the legal process of perfection of a lien on the property. As a result, the Trustee's lien status is superior to the rights of unperfected lien holders. In this case, the Plaintiffs do not have perfected assignments in the mortgages because they never had possession of the notes. Possession of the note is critical to perfection of any security interest pursuant to Article 9 of the Uniform Commercial Code, which is applicable to these transactions. *In re Stockbridge Funding Corp.*, 145 B.R. at 802.

### THE PREFERENCE ACTION BROUGHT BY THE TRUSTEE

The Trustee also seeks to have a payment made by the Debtor to one of the Plaintiffs avoided as a preferential transfer.

In the landmark case commonly known as the *Deprizio* decision, the Seventh Circuit interpreted §§ 547(b) and 550(a)(1) of the Bankruptcy Code to justify holding non-insider creditors which held insider guarantees accountable for payments made by a debtor within one year of a bankruptcy filing. *Levit v. Ingersoll Rand Financial Corp., (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1989). The recovery of preferential payments by a bankruptcy trustee or debtor is governed by Bankruptcy Code § 547(b):

> (b) Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest of the debtor and property—
>
> 1. to or for the benefit of a creditor;
> 2. for or on account of an antecedent debt owed by the debtor before such transfer was made;
> 3. made when the debtor was insolvent;
> 4. made: (a) on or within ninety days before the date of the filing of the petition; or (b) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> 5. that enables such creditor to receive more than such creditor would receive if: (a) the case were a case under chapter 7 of this title; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1988). Pursuant to Bankruptcy Code § 101(30):

> (30) "Insider" includes . . .
>
> (B) if the director is a corporation (i) director of a debtor; (ii) officer of a director; (iii) person in control of a debtor . . .

11 U.S.C. § 101(30) (1988).

Section 550 of the Bankruptcy Code provides as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, a trust-ee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from:
>
> (1) the initial transferee of such transfer or the entity for whose benefits such transfer may be made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (1988).

From this Court's reading of the *Levit* case and its progeny, it is clear that the rationale for extending the preference period for one year where the insider has guaranteed debts of certain creditors is to prevent insiders from obtaining the benefit of paying off only those debts which they personally guaranteed:

> Insiders frequently guarantee other loans. If the firm folds while these loans are outstanding, the insiders are personally liable. So insiders bent on serving their own interests (few managers hold outside lenders interests of equal weight with their own!) could do so by inducing the firm to pay the guaranteed loans preferentially. If the preference recovery period for such payments were identical to the one for outside debts, this would be an attractive device for insiders. While concealing the firm's true financial state, they would pay off (or at least pay down) the debts they had guaranteed, while neglecting others. To the extent they could use private information to do this more than nine (90) days ahead of the filing of the bankruptcy, they would make out like bandits. The guaranteed loans would be extinguished, and with them the guarantees.

*Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d at 1195.

However, the facts of this case are quite distinguishable. Mr. Gaines guaranteed virtually *all* of the debts owed by the Debtor. Therefore, there can be no allegation that Mr. Gaines made payments in an attempt to pay down some debts versus others, depending upon whether or not he was personally liable pursuant to a guarantee. Since all of the creditors of the Debtor are similarly situated by virtue of obtaining the

same guarantee, Mr. Gaines had no incentive to pay off one creditor over another. As a result, the rationale for extending the preference period beyond the ninety days no longer exists in this case, and the *Levit* case is inapplicable.

In addition, this Court notes that the Second Circuit has not adopted the *Levit* case and further notes that a majority of the Circuits have not followed *Levit*. Therefore, based upon the inapplicability of *Levit* to the facts in this case, the payments made by the Debtor between ninety days and one year prior to the filing of the petition to the Plaintiffs may not be recovered as preferential payments.

### CONCLUSION

This Court has subject matter jurisdiction over this controversy pursuant to 11 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (K) and (O).

The transactions at issue in this case are loans to the Debtor and not true loan participation agreements. As such, Section 541(d) is inapplicable to the transactions. The Plaintiffs do not have perfected assignments of the mortgages because they never possessed the notes. Therefore, as of the petition date, the notes and deeds were property of the Debtor's estate and the Plaintiffs merely have unsecured claims against the Debtor's estate. The payment made by the Debtor to Funaro in the amount of $826.96 is not voidable as a preferential transfer because the transfer occurred more than ninety (90) days prior to the petition date. Furthermore, the Trustee may not maintain a preference action against the Plaintiffs based on a broad reading of the *Deprizio* decision.

Settle an Order in accordance with this Decision.