**In re SPRINT MORTGAGE BANKERS CORP., Debtor.**

**George RYAN and Gloria E. Funaro, Plaintiffs–Appellants,**

**v.**

**Edward ZINKER as Trustee for Sprint Mortgage Bankers Corp., Defendant–Appellee.**

**No. CV 94–2158.**

United States District Court, E.D. New York.

Jan. 12, 1995.

Weisberg & Wismann by David C. Weisberg, Patchogue, NY, for plaintiffs-appellants.

Zinker & Gelfand by Stephen P. Gelfand, Smithtown, NY, for defendant-appellee.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Appellants George Ryan and Gloria E. Funaro appeal from an order of the United States Bankruptcy Court for the Eastern District of New York, Eisenberg, Judge, which denied appellants' motion for summary judgment, granted appellee trustee's cross-motion for summary judgment, and declared certain mortgages, notes, and proceeds therefrom, to be property of the debtor's estate, pursuant to section 541(a) of the Bankruptcy Code. 164 B.R. 224. The sole issue on appeal is whether appellants' interests in mortgages and notes assigned to them by the debtor are superior to those of the bankruptcy trustee, even though appellants' interests were not perfected.

## I. BACKGROUND

The facts, as found by the Bankruptcy Court, are undisputed. The Sprint Mortgage Bankers Corp. (the "debtor") was incorporated under the laws of New York as a licensed mortgage broker. It was in the business of making mortgage loans to various borrowers ("mortgagors") with funds obtained from third-party private investors ("lenders"). Appellants became such lenders. In return for their funds, the debtor, through its principal Hyman Gaines, promised that the appellants' funds would be invested in interests in mortgages and secured by assignment to appellants of notes and mortgages given to the debtor by mortgagors. In addition, Mr. Gaines personally guaranteed repayment of appellants' loans. The assignments of the mortgage interests to appellants were properly recorded, but the mortgage notes were retained by the debtor.

The debtor conducted business as follows: Funds from lenders were deposited by the debtor, along with funds from other sources, into a bank account. The debtor made loans to mortgagors out of this account. Typically, a note assigned to a lender was for a different amount than the loan it secured. No attempt was made by the debtor to earmark

specific loans to specific mortgages. Mr. Gaines would service the mortgages and collect each mortgagor's interest payment at no cost to the lender.

The debtor became insolvent. Using the debtor as a vehicle, Mr. Gaines continued to solicit funds from new lenders, but rather than using them for make new mortgage loans, he used them to repay earlier lenders and to personally benefit himself. Mr. Gaines's conduct resulted in a criminal indictment, a charge to which he ultimately pleaded guilty in this Court. According to the plea, Mr. Gaines's fraudulent scheme netted more than $20 million from approximately 400 lenders.

The debtor was insolvent when appellants made their loans. Appellants were not aware of the fraud or of the debtor's insolvency when they made their loans, and they remained unaware until the scheme began to unravel and the debtor discontinued interest payments to appellants.

On June 27, 1991, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"). Appellants brought the above-referenced adversary proceeding against Edward Zinker as trustee for the debtor, seeking a determination of their rights to the notes, and proceeds therefrom, securing the unpaid balance of appellants' loans.

By decision and order dated February 17, 1994, the Bankruptcy Court determined, *inter alia*, that the notes and proceeds were property of the debtor's estate, pursuant to section 541(a) of the Code, and that appellants' unperfected security interests therein were interests subordinate to those of the trustee. In determining that the trustee had priority, the court concluded that section 541(d) of the Code, which exempts secondary mortgage market participants from compliance with certain state laws governing perfection, did not apply because the appellants' transactions with debtor were loans secured by mortgage assignments rather than outright purchases of mortgages.

On appeal, appellants do not dispute the applicability of section 541(d). Appellants argue that the court erred by applying Arti-cle 9 of the New York Uniform Commercial Code ("NYUCC") instead of the New York Real Property Law ("NYRPL"). Appellants contend that their interests are superior to those of the trustee under the NYRPL because they recorded the mortgages assigned to them by the debtor.

## II. *DISCUSSION*

■ A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Bankruptcy Rule 8013. A bankruptcy judge's findings of fact "shall not be set aside unless clearly erroneous." *Id.* The appellate court, however, is not bound by the bankruptcy judge's view of the law, which may be reviewed *de novo. See* 9 Collier on Bankruptcy ¶ 8013.03. In the instant appeal, appellants do not contest the bankruptcy court's findings of fact; rather, they contend that the court's conclusions of law are incorrect.

Upon the filing of a bankruptcy petition, the Code creates an estate for the benefit of the debtor's creditors and confers certain powers to a trustee, who will preside over that estate. The estate, created by section 541(a) of the Code, includes with limitations "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well established that loan proceeds held by the debtor are property of the estate.

One of the special powers possessed by the trustee is hypothetical lien creditor status for priority purposes. As of the commencement of the case, the trustee is treated as though he has completed the legal process of perfection of a lien on all property of the estate. 11 U.S.C. § 544(a). As such, the trustee's lien status is superior to that of unperfected lienholders.

■ Whether appellants' interests in the notes, and the proceeds therefrom, are superior to those of the trustee will depend on how their transactions with the debtor are classified. As stated in their brief on appeal, appellants agree with the bankruptcy court that they "lent money to the debtor and that the debtor had given its own obligation ... in return for those loans and that the debtor had also given assignments of the mortgages

concerned as security for the performance by the debtor of its obligations." Appellants' Brief at 9. Under New York law, these transactions create security interests in the notes, and the proceeds therefrom—security interests that are governed by the Article 9 of the Uniform Commercial Code. NYUCC § 9–102(2), § 9–102 cmt. 4. *See State Bank of Albany v. Fioravanti*, 51 N.Y.2d 638, 435 N.Y.S.2d 947, 949, 417 N.E.2d 60 (Ct.App. 1980); *Commercial Trading Co. v. Freidus*, 114 A.D.2d 292, 499 N.Y.S.2d 43, 44–45 (App. Div. 1st Dep't 1986); *Federal Deposit Ins. Corp. v. Forte*, 94 A.D.2d 59, 463 N.Y.S.2d 844, 849 (App.Div. 2d Dep't 1983). *Accord Landmark Land Co. v. Sprague*, 529 F.Supp. 971, 976–77 (S.D.N.Y.1981), *rev'd on other grounds*, 701 F.2d 1065 (2d Cir.1983); *In re Stockbridge Funding Corp.*, 145 B.R. 797, 807–10 (Bankr.S.D.N.Y.1992).

In order to perfect a security interest in a note under Article 9 of the NYUCC, the secured party must take possession of the note. NYUCC § 9–304(1). Because appellants did not take possession of the notes, the security interests therein are unperfected under Article 9. As a result, appellants' interests are subordinate to those of the trustee, who is treated by the Code as holding a perfected lien on all property of the estate.

Appellants' argue that the NYRPL, rather than Article 9, governs their transactions with the debtor. They contend that under the NYRPL they have priority over the trustee by virtue of their recordation of the mortgages assigned to them by the debtor. They point to section 9–104(j) of the NYUCC which states that Article 9 does not apply "to the creation or transfer of an interest in or lien on real estate."

Appellants reliance on section 9–104(j) is misplaced. Section 9–102(3) of the NYUCC states that Article 9's applicability "to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply." The Official Comment to section 9–102 provides an example:

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real

estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to [a third party], this Article applies to the security interest thus created, which is a security interest in an instrument, even though the instrument is secured by a real estate mortgage.

NYUCC § 9–102 cmt. 4. New York courts have held that the plain meaning section 9–102(3) and Official Comment 4 indicate that Article 9 applies "to all facets of transactions using mortgages and notes as collateral except those issues that arise when the mortgagee's creditor is attempting to enforce the mortgagee's rights under the mortgage." *Forte*, 463 N.Y.S.2d at 849 (quoting Comment, Security Interests in Notes and Mortgages: Determining the Applicable Law, 79 Col.L.Rev. 1414, 1427 (1979)).

Appellants made loans to the debtor; in return, the debtor made a promise to repay those loans, which was secured by assignment to appellants of its interests in the notes and proceeds. These transactions created Article 9 security interests. If appellants were attempting to enforce the debtor's rights under the mortgages, the NYRPL would apply, but they are not. Because appellants did not perfect their security interests, their interests in the notes and proceeds are subordinate to those of the trustee.

One last issue, which was not raised on appeal, merits a brief discussion by the Court in light of Second Circuit precedent. In *In re Howard's Appliance Corp.*, 874 F.2d 88 (2d Cir.1989), the debtor's actions prior to the commencement of the bankruptcy case prevented a creditor from perfecting its security interest in certain collateral. The Second Circuit determined that the debtor acted in bad faith, and that, upon filing its bankruptcy petition, the debtor held the collateral securing its obligation to the creditor in constructive trust for the benefit of the creditor. *Id.* at 93–95. Because the debtor held merely bare legal title to the collateral prior to filing its petition, the court held that, upon filing, the bankruptcy trustee's rights in the collateral were subordinate to those of the creditor, even though the creditor had not perfected its interest. *Id.*

8

The facts on this appeal are undisputed. Although the debtor's dealings with appellants are laden with the indicia of bad faith—*e.g.*, Mr. Gaines's plea agreement detailing his orchestration of a fraud that reached appellants and beyond—there is no indication in the record that the debtor, or anyone associated with the debtor, acted to deter appellants from perfecting their security interests. Appellants could have perfected their security interests by taking possession of the notes. There is no indication in the record that appellants sought possession of the notes, or that the debtor would not have surrendered possession of the notes had appellants made such a request. Therefore, even if the Court had been presented with this issue, the undisputed facts on appeal are not sufficiently similar to the facts in *Howard's Appliance* so as to warrant the imposition of a constructive trust in favor of appellants.

### III. *CONCLUSION*

For the above reasons, appellants' appeal is denied and Judge Eisenberg's order is affirmed.

SO ORDERED.